Crest Commercial, Inc., a Corporation, Plaintiff-Appellee, v. Union-Hall, Inc., a Corporation, Elbert L. Bagus and Rita Bagus, Defendants-Appellants.

Gen. No. 68–50.

Second District.

December 27, 1968.

Roszkowski and Paddock, of Rockford, for appellants.

Miller, Hickey, Collins & Close, of Rockford, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The plaintiff, Crest Commercial, Inc., brought a declaratory judgment action against the defendant, Union-

Hall, Inc., et al., for the interpretation of a shopping center lease covering realty located in Rockford, Illinois. The plaintiff is the owner and developer of the center and the defendant is a tenant of plaintiff and retailer of a wide variety of merchandise.

In November, 1960, plaintiff's predecessor in title entered into a written long-term lease with the defendant. The terms of the lease required the plaintiff to erect a building upon Parcel A for the use of the defendant and further provided "that Parcel A, Parcel B and Parcel C in total constitute and are to be considered for the purpose of this lease 'the shopping center.' " At this same time, one Bonavia, who later became a Vice-President of the plaintiff, owned an undivided one-half interest in certain land, referred to herein as Parcel D, which was east and adjacent to Parcel B but not included in the original tract covered by the lease. The other one-half interest of Parcel D was owned by one of plaintiff's predecessors in title. Parcel D was transferred to the present plaintiff about one year after the lease was executed. At the time of acquisition it consisted of a deep pit which plaintiff began to fill in 1962 and completed in 1966.

The original lease between the parties contained a covenant describing the type of merchandise sold by defendant in great detail and prohibiting plaintiff from leasing "any of the shopping center area to a business that substantially competes with" defendant's business. The lease also provided that defendant would have an easement in certain described parking areas (as shown by plot plan "A" attached thereto; however, the plot plan did not show parking within Parcel B) and that such areas would not be used "except by tenants of said shopping center and their agents, employees, customers and invitees."

In 1962 the parties entered into a supplemental lease and an addition was built to defendant's building. The supplemental lease included parking within Parcel B, and

provided that the "Lessee and its sub-tenants shall have the right to use in common with all of Lessor's other tenants for off-street parking, drive and walkway purposes all of those portions of Lessor's premises contained within Exhibit 'A' and not built upon and which are anywhere within Exhibit 'A' or adjacent thereto available for such purposes." It should be noted that Exhibit "A" in the 1960 lease was not the same as Exhibit "A" in the 1962 lease.

The supplemental lease provided that plaintiff could build on certain other property it was attempting to acquire if it complied with the restrictive covenant as to competition but this did not include Parcel D nor was Parcel D mentioned in either lease.

From 1960 to the beginning of this dispute the shopping center developed and a number of stores were added including a restaurant, a cleaner, an office building and "Appliance City" which, we assume, is a store selling appliances. By 1967 the pit on Parcel D was filled and the plaintiff commenced negotiation with the Walgreen Company to lease this property for the construction of a typical Walgreen Drugstore. In addition, the proposed lease would entitle Walgreen's the right to use, in common with other tenants, the parking area located in Parcel B.

It is conceded that Walgreen's line of merchandise is competitive with the line of goods sold by defendant and, therefore, if the restrictive covenant contained in defendant's lease applies to Parcel D, proposed to be leased to Walgreen's, a violation of the covenant would occur.

When the parties were unable to agree that no violation would occur, plaintiff brought this action seeking a declaratory judgment authorizing the lease with Walgreen. The defendant moved to dismiss on the grounds that there was no actual controversy between the parties and that the failure to join Walgreen's as a party was fatal to the cause. After denial of the motion, the trial

113

court decided that an actual controversy did exist, that the restrictive covenant did not apply to Parcel D and that the Walgreen Company would have the right to use portions of the parking areas of Parcel B in common with the other tenants.

The defendant contends (1) that the complaint does not state a cause of action; (2) that the evidence failed to disclose the existence of an actual controversy (3) that failure to join Walgreen's as a party made it unlikely that the subject matter of the litigation would be terminated which is necessary under the Declaratory Judgment Act (Ill Rev Stats 1965, c 110, § 57.1(1)); (4) that the court erred when it concluded that the noncompetitive clause did not apply to Parcel D and (5) that the court's conclusion that Parcel D is not part of the shopping center for purposes of the restrictive covenant is inconsistent with the court's conclusion that Walgreen's may park in a portion of Parcel B, which is the shopping center.

We are of the opinion that the complaint filed herein stated a cause of action, that an actual controversy existed and that the failure to join Walgreen as a party was not fatal to the action.

■■■■■■ The Declaratory Judgment Act was adopted to provide a means of resolving actual controversies. The courts are not open to those seeking advisory opinions on imaginary disputes. However, the courts will consider a controversy if it actually exists. The statute itself provides that the court may, in cases of actual controversy, make binding declarations of rights if these declarations will terminate the controversy, or some part thereof. The Supreme Court in A. S. & W. Club of Waukegan v. Drobnick, 26 Ill2d 521, 524, 187 NE2d 247 (1962) said:

> "In limiting the remedy to 'cases of actual controversy' the statute was meant merely to distinguish justiciable cases from disputes of a hypothetical or abstract character. It was not intended to exclude

114

concrete disputes admitting of an immediate and definitive determination of the legal rights of the parties."

██ The Declaratory Judgment Act should be liberally construed to carry out its good purpose. In Trossman v. Trossman, 24 Ill App2d 521, 525, 165 NE2d 368, the Court quoted from Committee Comments and stated:

"It supplies a new form of relief where needed. It is designed to afford security and relief against uncertainty with a view to avoiding litigation, rather than in aid of it, and to settle and fix rights before there has been an irrevocable change of position of the parties in disregard of their respective claims of right, and thus promote peace, quiet and justice. . . ."

and, at pp 531–532, the Court, in quoting from 26 CJS, Declaratory Judgments, § 28, went on to say:

"It is not essential to a proceeding for declaratory judgment that there be a violation of a right, a breach of duty, or a wrong committed by one party against the other. The mere existence of a cloud, the denial of a right, the assertion of an unfounded claim, the existence of conflicting claims, or the uncertainty or insecurity occasioned by new events may constitute the operative facts entitling a party to declaratory relief."

██ Applying these standards to the present case it is clear that an actual controversy does exist. Although the Walgreen lease was not signed, it was offered in evidence and the trial court ordered that the lease could be executed without violating any of plaintiff's rights. The defendant concedes that the Walgreen building need not be built before an actual controversy arises but insists that the lease must be executed; however, the defendant ad-

mits that this is a "narrow technical issue." The record permits no doubt of the existence of a real controversy between the parties. The plaintiff admits that it has negotiated a lease with Walgreen and that Walgreen will sell a competitive line. To insist on the mere execution of the lease to make the controversy "real" would be to negate the salutary purpose of the Declaratory Judgment Act.

It might have been desirable to make the Walgreen Company a party to the case but this failure is not fatal. Indeed, the defendant itself could have joined Walgreen as a party if it had so desired. In the case of A. S. & W. Club of Waukegan v. Drobnick, supra, the Supreme Court considered the right of a landowner to sell without the burden of a deed restriction. The buyer was not made a party and not considered essential. In Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419, 421–423, 129 NE2d 1 (1955), the Supreme Court considered the validity of the zoning of certain property which the plaintiff desired to sell for a purpose not then permitted. The buyer was not made a party and was not considered essential to a binding declaration. Declaratory judgment is a commonly used remedy in the zoning field. Even where a sale or lease is contemplated, it is not necessary to join the buyer or lessee since the owner has standing to raise the issue and a declaration will be binding.

Finally, we consider the main issues of the case: does the restrictive covenant in defendant's lease extend to Parcel D where it is admitted that Walgreen will sell a competitive line and, do the parking restrictions in defendant's lease prohibit Walgreen from using any part of the premises in Parcel B for parking purposes?

Defendant's lease defines Parcels A, B and C as "the shopping center." Parcel D is not included. Defendant argues that it should be included by implication because it was the intention of the parties to protect defendant

116

against competition in the entire shopping center without regard to its eventual size.

■■■■ Restrictive covenants are valid in Illinois if they are reasonable, House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 37, 225 NE2d 21 (1967). However, as a general rule restrictive covenants are strictly construed and all doubts must be resolved in favor of natural rights and against restriction, Staley v. Mears, 13 Ill App2d 451, 456, 142 NE2d 835 (1957). In Postal Tel. Cable Co. v. Western Union Tel. Co., 155 Ill 335, 40 NE 587 (1895), the Supreme Court said at pp 347–348:

> "Restrictions on the power of alienation have long been unfavored, and the policy of this State has ever been hostile to them, and this principle is so firmly engrafted on our polity (sic) that such covenants will be construed with the utmost strictness, to the end that the restraint shall not be extended beyond the express stipulation; and all doubts, as a general rule, must be resolved in favor of a free use of property and against restrictions."

In addition, it appears that the lease in question was prepared by the defendant and the rule is that a written instrument is construed most strongly against the person who prepared it, Western Illinois Oil Co. v. Thompson, 26 Ill2d 287, 291, 186 NE2d 285 (1962).

The defendant argues that the rule of strict construction should not apply to shopping centers because they are of recent origin and have in many cases expanded rapidly beyond their original contemplation. Defendant acknowledges that there is no authority in the Illinois cases for this proposition but they direct our attention to cases from other states which seem to offer support. A few examples are: Carter v. Adler, 138 Cal App2d 63, 291 P2d 111 (1955), Parker v. Grocer Co., 246 Miss 873, 153 So2d 261 (1963) and Daitch Crystal Dairies, Inc. v.

117

Neis Loss, 60 Misc2d 504, 185 NYS2d 188 (1959). Many of these cases turn on the good faith of the parties. A tenant is deluded into believing himself protected and then the center is expanded to evade the restriction. We cannot presume bad faith and there is nothing in the record before us from which such a conclusion can be drawn.

It is true that shopping centers are, for the most part, a post-World War II development. However, the rules by which we construe documents are ancient and we see no logical basis for having one set of rules for shopping centers and a different set of rules for other contractual relationships. We recognize the problem presented but the defendant could have avoided any difficulty by simply drawing the lease to cover the shopping center as it then existed and as it might exist at any time in the future. The parties clearly expressed themselves in the lease. This court has no right to remake their agreement. We can only apply the lease as written and in so doing we conclude that the restrictive covenant does not cover the premises in question.

At first glance it would appear that the trial court construed the lease in one manner to determine the application of the restrictive covenant and in the opposite manner to determine the parking provisions. A more careful examination of the court's reasoning indicates, however, that this is not the case. The original lease of 1960 gave defendant exclusive parking rights in a described area and parking rights in other areas to be used in common with other "tenants of said shopping center. . . ." The supplemental lease executed in 1962 provides that defendant's right to park is in common the "Lessor's other tenants . . ." on "all of those portions of Lessor's premises contained within Exhibit 'A' . . . or adjacent thereto . . . . " It will be seen, therefore, that while defendant had exclusive parking rights within a portion of the original premises, its rights were nonexclusive on the balance of the center which included Parcel B.

118

The trial judge found from the evidence, that the parking lot was of such size that the addition of Walgreen's would create no parking problem for defendant even in peak business hours when, as a rule, not more than 30% of the parking spaces in Parcel B were used by defendant. ■ We agree that the trial court correctly interpreted the defendant's lease and supplemental lease both with respect to the restrictive covenant and to the use of the unrestricted parking area in Parcel B. Therefore the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON and DAVIS, JJ., concur.