RALSTON PURINA COMPANY, Plaintiff-Appellee, v. ROY B. KILLAM, Exr. of the Last Will and Testament of PEARL K. JOHNSON, Deceased, Defendant-Appellee—(NOBLE JOHNSON AND BERNADINE M. HUNTER, Defendants-Appellants.)

(No. 71-153;

Fifth District—March 8, 1973.

Fribley & Fribley, of Pana, for appellants.

McDonald & Strickland, of Carrollton, (Hugh A. Strickland, of counsel,) for appellee Ralston Purina Co.

William L. Turner, of Shelbyville, for appellee Roy B. Killam.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Shelby County, (a) awarding attorney fees and other costs to plaintiff-appellee, operator of a grain elevator which as plaintiff filed an interpleader proceeding to determine who was to receive the proceeds of sale of crops planted and growing on farm land, subject to a life estate, which crops had not ripened and were not harvested at the time of the death of the life tenant; and (b) ordering that there be a *pro rata* distribution of the remaining proceeds of the sale of said crops between the estate of the life tenant on the one hand, and the remaindermen on the other hand.

The parties have presented a stipulation of facts which clearly and concisely sets out all the facts necessary for the determination of this appeal.

Ernest H. Johnson died testate on October 16, 1961, and devised to his wife, Pearl K. Johnson, hereafter called Life Tenant, a life estate in 65 acres of farm land in Shelby County, Illinois, and subject to said life estate the remainder interest was devised to Noble Johnson and Bernadine M. Hunter, hereafter called Remaindermen, the appellants herein. The life tenant leased this land to a farm tenant on a yearly crop sharing basis, same beginning on March 1, 1969.

The life tenant, died on August 12, 1969, at which time a crop of corn and soybeans was growing on the 65 acre tract and the landlord's share thereof, having a value of $3,209.82, was thereafter harvested and was delivered to the elevator of the appellee, Ralston Purina Company, hereafter called Ralston.

The life tenant, prior to her death, had paid for the landlord's share of the fertilizer used in producing said crop, which amounted to the sum of $152.15.

The Remaindermen, herein, paid the 1969 real estate taxes on said 65 acre tract in the amount of $714.12.

Inasmuch as the life tenant and the remaindermen could not agree as to the disposition of the proceeds of the landlord's share of said crop of

corn and soybeans, thereupon appellee, Ralston, instituted an Interpleaded proceeding in the Circuit Court of Shelby County, Illinois, and paid said sum of $3,209.82 to the Clerk of the Court, and made the claimants to said fund, namely, appellee, Roy B. Killam as Executor of the Estate of the Life Tenant, on the one hand and appellants, the Remaindermen as defendants thereto.

The appellee, Ralston, asked the court to award to it, the moneys it had advanced for filing fee and sheriff's fee, and also asked the court to award to Ralston a reasonable attorney fee, which was stipulated to be the sum of $250.

The trial court in its opinion held that: (A) Ralston was first entitled to be paid the filing fee and sheriff's fee advanced by it in the sum of $55.80, plus its attorney fee in the amount of $250.00; and (B) that the Principal and Income Act was not applicable, and had not repealed Section 36 of the Landlord and Tenant Act, by implication or otherwise, and that inasmuch as the Life Tenant had lived 164 days of the lease period, that therefore the Estate of the Life Tenant was entitled to receive 164/365 of the landlord's share of the 1969 crop money, plus 201/365 of the fertilizer expenses advanced by the Life Tenant during her lifetime, less 164/365 of the 1969 real estate taxes paid by the Remaindermen, and that the Remaindermen were entitled to receive 201/365 of the landlord's share of the crops, less 201/365 of the fertilizer costs paid by the Life Tenant, plus 164/365 of the 1969 taxes so paid by the Remaindermen.

The appellant Remaindermen admit that appellee Ralston is entitled to first recover out of the impounded funds, the filing fee and sheriff's fee advanced by it in the amount of $55.80, but deny that appellee, Ralston is entitled to recover therefrom any attorney fees, and assert that all of the impounded funds, less only the sum of $55.80 due to appellee, Ralston and less the fertilizer bill of $152.15 due to the appellee, Estate of the Life Tenant, should be paid to Appellant Remaindermen.

■■ Appellants contend that there is neither statutory nor case law authority for the allowance of attorney fees on a set of facts such as are here presented. Their position is supported by a line of cases, the latest of which is *Curran v. Harris Trust & Savings Bank*, 2 Ill.App.2d 395, 119 N.E.2d 483, which is based on the discussion of the question by our Supreme Court in *Metropolitan Life Insurance Co. v. Kinsley*, 269 Ill. 529, at 530, an interpleader proceeding, in which it was said:

> "The general rule has always prevailed in this State that solicitor's fees could not be taxed as costs in chancery suits without statutory authority; that while a court of equity had discretion in

awarding costs it must confine that discretion to the fees authorized by statute. [Citing cases.]"

Appellee Ralston contends that under Ch. 33, sec. 18, Ill. Rev. Stat., 1969, which allows a court discretion in allowance of costs and *Firemen's Insurance Co. of Newark v. Newell*, 10 Ill.App.2d 371, at 375, 135 N.E.2d 116, at 118, which holds discretion in assessment of costs is reviewable and may be reversed if the discretion is abused, is here applicable and that there was no abuse of discretion since the parties stipulated to the reasonableness of the proposed fee. The argument overlooks the fact that the parties did not stipulate that attorney fees should be allowed in this case and that the trial court's exercise of discretion is limited to such fees as are authorized by Statute.

We therefore reverse the trial court's allowance of attorney fees.

The major controversy is as to whether paragraph 36 of Chapter 80, Ill. Rev. Stat. being Section   of the Landlord and Tenant Act is applicable or whether par. 162 of Chapter 30 being Section 4 of the Principal and Income Act enacted in 1941 and amended in 1959, Ill. Rev. Stat. 1961, is applicable in determining the right of the estate of the life tenant to any portion of the proceeds of the sale of the crops growing on the farm land in question, unripened and unharvested, at the time of the death of the life tenant on August 12, 1969.

Appellants contend that the adoption of the Principal and Income Act in 1941 repealed by implication Section 1 of the Landlord and Tenant Act which was adopted in 1897; that the two statutes are irreconcilably repugnant, and thus the latter has abrogated the former to the extent that they are inconsistent and irreconcilable since it cannot be supposed that the General Assembly intended to enact laws which are contradictions, and cites cases wherein that principle was applied. Appellants however based their contention primarily on specific language to be found in the title, definitions in Section 1 and specific language in Sections 2, 3, 4 and 16 of The Principal and Income Act. At no place in that Act is specific reference made to the Landlord and Tenant Act.

Section 1 of "An Act in relation to Landlord and Tenant" provided in pertinent part;

"[I]f any such tenant for life shall die before the day when any rent is to become due, his executors or administrators may recover the portion of rent which accrued before his death, and the remaindermen shall recover the residue."

The pertinent part of Section 4 of the Principal and Income Act, par. 162, Ch. 30, Ill. Rev. Stat. 1961, which was in effect both at the time the life estate came into existence and the death of the life tenant provided:

"*   *   *   Except as herein above provided there shall be no ap-

portionment of income as between said tenant or his estate and the succeeding tenant or remainderman and the remaining portion of the income from periodic payments of interest and all other income whether periodic or otherwise, which becomes payable subsequent to the expiration of the preceding estate including, but not limited to, rents and annuities shall be paid to the person next entitled to income by the terms of the transaction by which the principal was established * * *."

For the quoted part of Section 4 to be applicable it has to be assumed that the Legislature considered the making and probate of a will creating a life estate or the death of a testator, as a "transaction by which the principal was established". The trial court found that the Principal and Income Act did not specifically address itself to the factual situation of a crop share agreement between a life tenant and under tenant with the life tenant's share contested between the personal representative and the remainderman, while the Landlord and Tenant Act did specifically address itself to that particular factual situation, and likewise found that neither courts, attorneys nor the Legislature speak of wills as transactions, or real estate as principal or that the death of a testator is synonymous with a "transaction by which the principal is established".

There can be no question that the Landlord and Tenant Act contemplates exactly the situation at hand, namely, a crop share agreement between a life tenant and under tenant with the life tenant's share of the growing crops contested between his personal representative and the remaindermen. See *Wilson v. Hagey* (1911), 251 Ill. 452.

Appellants' contention is that the Landlord and Tenant Act was repealed by implication by adoption of the Principal and Income Act in 1941. They are able to cite no case law authority other than cases dealing generally with repeal by implication where statutes are irreconcilably repugnant. For authority, other than their interpretations of various sections of the Principal and Income Act, which they contend are persuasive of the intention of the Legislature to amend by implication, they point to a declaration of conflict between the two Acts and a prediction that the latter will be declared to have repealed the former by implication, citing *Coordinated Transport v. Barrett*, 412 Ill. 321, 106 N.E.2d 510, as authority, to be found in recent pocket part supplements to James, Illinois Probate Law and Practice, vol. 2, § 43.115 in a chapter dealing with trusts and their management and disposal. We find this to be of little persuasive value since the broad language contained in *Coordinated Transport* does not firmly support the conclusion of the commentator when read in connection with the cases on which it is based, and the comment ignores generally accepted principles applicable to re-

peal by implication; furthermore, the author of the text, William M. James, in exhaustive study of Section 4 of the Principal and Income Act does not even mention that it might be considered to be in conflict with the Landlord and Tenant Act, and discusses the holding of *Wilson v. Hagey, supra,* (See James, vol. 2, § 43.115 at p. 276) without suggestion of its inapplicability since the Principal and Income Act was enacted.

Our Principal and Income Act is a substantial embodiment of a Uniform Principal and Income Act which has been adopted by numerous other states which also have separate apportionment legislation with reference to growing crops. In an annotation entitled "Uniform Principal and Income Act as applicable to estates under administration" 166 A.L.R. 428 there is no suggestion that that Act is in conflict with any separate apportionment acts, with reference to apportionment of receipts between tenants and remaindermen. In an annotation entitled "Rights in Respect of Crops as between Estate of Life Tenant and Remainderman" in 47 A.L.R.3d 784, which considers "the relative rights of the estate of a life tenant and the remaindermen in regard to crops already grown upon or commenced to be grown on the premises acquired or held under the life tenancy", in discussing the effect of specific statutes providing for the apportionment of rent (III, sec. 12, 13 and 14 at page 809 *et seq.*) there is no suggestion that the Uniform Principal and Income Act might be in conflict with such apportionment statutes. In Horner, Probate Practice and Estates, Vol. 1, 1961 Rev. Vol. at Sec. 275 "Rent due life tenant" reference is made to the apportionment between the personal representative of the life tenant and the remaindermen provided by the Landlord and Tenant Act with no reference made to the Principal and Income Act. In the same publication, volume 4, 1962 Rev. vol. sec. 2366 at page 192, the author directs attention to the Principal and Income Act "which provides for the apportionment of income and principal between tenants and remaindermen", making no mention of crop share rental or any conflict with the Landlord and Tenant Act.

As a result we are not persuaded that the two Acts are so irreconcilably repugnant as to apply repeal by implication. However if we assumed the two Acts to be in conflict the provision of the Landlord and Tenant Act would apply because it is a specific statute covering the particular factual situation here present, while the Principal and Income Act is a statute of general application and it is a cardinal principle of statutory construction that the more specific controls in preference to the general. The principle is referred to in *Board of Education School Dist. No. 33 v. City of West Chicago,* 55 Ill.App.2d 401, at 404, where the court states the rule:

"A familiar rule of statutory construction is that, where there are

two statutory provisions, one of which is general and designed to apply to cases generally, and the other of which is particular and relates only to one subject, the particular provisions must prevail and must be treated as an exception to the general provision."

as enunciated by our Supreme Court in *County of DeWitt v. Greene,* 320 Ill. 491, 151 N.E. 372.

■■ Repeal by implication is not favored and this is particularly true when one statute deals with a specific subject matter and the other is of a general nature. In *People v. Pennsylvania R.R. Co.,* 19 Ill.2d 122, at 129, 166 N.E.2d 86, at 90, our Supreme Court said:

"To give effect of appellee's contentions would result in the repeal of section 8-13 by implication and run counter to numerous decisions of this court which hold that repeals by implication are never favored, and that the clearest case possible must be made before inference may properly be drawn that a later act, by implication repeals an earlier one. [Citing cases.] There is no clear case here but, on the contrary, there is much which mitigates against repeal by implication. It is a settled rule of statutory construction that where there is found in a statute a particular enactment, it is held to be operative as against the general provision of the same subject either in the same act or in the general laws relating thereto. [Citing cases.]"

We find that despite the broad language of the title of the Principal and Income Act, the definitions contained therein and language referring to "rents" and "apportionment" therein, and the language of section 16 of that Act, that it is general in nature, while the Landlord and Tenant Act is a particular enactment applying specifically to the factual situation here present. It is to be noted that Section 16 of the Act speaks in terms of "apportionment of receipts and expenses among tenants and remaindermen, which may have been adopted by trustees in the administration of trusts", in the same paragraph as is stated that the Act "shall not be considered as declaratory of the law as it existed prior to its enactment" which the appellants contend clearly indicates repeal. We can comprehend of nothing more general than a reference to "the law". Language subsequent to that reference indicates that "the law" referred to is the law applicable to "trustees in the administration of trusts". This does not purport to contemplate nor specifically address itself to the simple situation embraced in the Landlord and Tenant Act. Furthermore, the fact that definitions and terms used in the Principal and Income Act are not ambiguous does not mean that they are specifically addressed to a given factual situation, whereas the language of the Land-

lord and Tenant Act is a particular enactment addressed to the exact factual situation at hand. We therefore conclude that the applicable provisions of the Landlord and Tenant Act were not repealed by the enactment of the Principal and Interest Act, and are applicable in this case.

For the foregoing reasons we approve the trial court's application of the Landlord and Tenant Act.

We therefore reverse in part and affirm in part, and remand this cause for entry of a judgment consistent herewith.

JONES and CREBS, JJ., concur.