NORTHWESTERN UNIVERSITY, Plaintiff-Appellee, *v.* THE STATE OF ILLINOIS, Defendant-Appellant.—(BERNARD CAREY, Defendant.)

First District (2nd Division)    No. 76-943

Opinion filed December 27, 1977.

PUSATERI, J., concurring in part and dissenting in part.

William J. Scott, Attorney General , of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

William H. Thigpen, Frederick J. Artwick, and Gerald L. Anst, all of Sidley & Austin, of Chicago, and James M. Perry, of Evanston, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from an order entered by the circuit court of Cook County, denying defendants' motions to strike and dismiss plaintiff's amended complaint for declaratory judgment and other relief,[1] and denying defendant State of Illinois' motion for reconsideration. The circuit court held (1) that an actual controversy existed upon which declaratory judgment could properly be based; and (2) that the Illinois General Assembly impliedly repealed section II of the first amendment to the Charter of Northwestern University by enacting the local option statute (Ill. Rev. Stat. 1975, ch. 43, par. 110).

Plaintiff, Northwestern University, is an Illinois corporation located in Evanston, Illinois. Plaintiff's charter, approved by the Illinois legislature January 28, 1851, and amended February 14, 1855, contains the following pertinent provisions:

> "Section II. No spiritous, vinous, or fermented liquors shall be sold under license, or otherwise, within four miles of the location of said University, except for medicinal, mechanical, or sacramental purposes, under a penalty of twenty-five dollars for each offense, to be recovered before any Justice of the Peace of said County in an action of debt in the name of the County of Cook: Provided, that so much of this act as relates to the sale of intoxicating drinks within four miles, may be repealed by the General Assembly whenever they may think proper."
>
> (First amendment to Charter, section II, approved February 14, 1855.)
>
> "Section IX. Should the corporation at any time act contrary to the provisions of this charter, or fail to comply with the same, upon complaint being made to the Circuit Court of Cook County, a *scire facias* shall issue, and the circuit attorney shall prosecute in behalf of the People of this State for forfeiture of this charter." Charter, section IX, approved January 28, 1851.

On February 11, 1975, plaintiff filed a complaint requesting a declaratory judgment (amended September 9, 1975) alleging, *inter alia,* that the prohibition contained in section II of the first amendment to the Charter was repealed by implication by Ill. Rev. Stat. 1934, ch. 43, par. 110. This legislation, commonly known as the local option statute, provides in relevant part that:

---

[1] Since this is an appeal from the denial of a motion to strike and dismiss and motion to reconsider, and both defendants elected to proceed to judgment without filing answers, the facts, well-pleaded, are taken as true.

"In every city, village or incorporated town, the city council or president and board of trustees, and in counties in respect of territory outside the limits of any such city, village or incorporated town the county board shall have the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this Act and the amount of the local licensee fees to be paid for the various kinds of licenses to be issued in their political subdivision,* * *." Ill. Rev. Stat. 1975, ch. 43, par. 110.

Motions to strike and dismiss the amended complaint for declaratory judgment were filed by defendants Bernard Carey and the State of Illinois. After a hearing on these motions the circuit court of Cook County found that an actual controversy existed. Defendant State of Illinois then filed a motion to reconsider and vacate that part of the order finding an actual controversy. The circuit court, after a hearing, entered an order denying the motion. This order found that an actual controversy existed with respect to the allegations of the amended complaint and paragraph I of plaintiff's prayer for relief. The circuit court further found that section II of the first amendment to plaintiff's charter had been repealed by section 1 of article IV of the Dramshop Act (Ill. Rev. Stat. 1975, ch. 43, par. 110). It is from these findings that defendant State of Illinois appeals.

■■ The Illinois Civil Practice Act authorizes the entry of a declaratory judgment "in cases of actual controversy." (Ill. Rev. Stat. 1975, ch. 110 par. 57.1(1).) In searching for an "actual controversy" we must liberally construe the declaratory judgment statute. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372.

Plaintiff has sought, and obtained, a declaration that section II of the first amendment to its charter has been impliedly repealed. If we affirm that declaration, plaintiff will undoubtedly endeavor to obtain a liquor license from the city of Evanston. If plaintiff had attempted to sell liquor in violation of the prohibition contained in its charter, plaintiff would have been subject to prosecution for forfeiture of the charter. (Charter, section IX, approved January 28, 1851.) Plaintiff need not act at its peril prior to seeking declaratory relief. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status damages plaintiff's pecuniary or material interests and establishes a condition of justiciability. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372. *Accord, St. Joseph Hospital v. Corbetta Construction Co.*, (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51.

■■ Plaintiff is, therefore, entitled to know whether or not a portion of

its charter remains in force and effect. Doubt has been cast upon the validity of a charter provision. Consequently, we must agree with the circuit court's finding that an actual controversy exists.

We must now address ourselves to the status of section II of the first amendment to plaintiff's charter. Plaintiff contends that this section has been impliedly repealed by the passage of the local option statute. Ill. Rev. Stat. 1975, ch. 43, par. 110.

■■ An implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act, and therefore the last expression of law prevails since it cannot be supposed that the lawmaking power intends to contradict and enforce laws which are contradictions. (*Rosehill Cemetery Co. v. Lueder* (1950), 406 Ill. 458, 94 N.E.2d 342.) It is also essential that the implication, to be operative, must be necessary. *Rosehill Cemetery Co. v. Lueder.*

Repeal by implication is not favored, and even if there is an apparent inconsistency between two laws, they will be construed, insofar as possible, so as to preclude an implied repeal of the earlier by the later. (*People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38.) It is only when there is a clear repugnancy and both acts cannot be carried into effect that the former is impliedly repealed. *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378, Ill. 506, 39 N.E.2d 26; *Dingman v. People* (1869), 51 Ill. 277.

The Illinois Supreme Court has had the opportunity to consider a factual pattern similar to that in the instant case, *Dingman v. People* (1869), 51 Ill. 277, and, pursuant to a careful analysis of the charters involved, disposed of the case through the doctrine of implied repeal. In *Dingman,* appellant had been indicted for maintaining a place, within one mile of the site of the University of Chicago, for the sale of spirituous liquors, for other than mechanical or medicinal purposes, contrary to the charter of the University of Chicago. The charter, adopted on the 30th of January, 1857, provided, in relevant part, that:

> "To enable the trustees to fulfill the trusts hereby committed to them, and to secure the ends of this corporation, it is hereby declared unlawful for any person to entice any student of said university into the practice of gaming, or to furnish to any student any device or instrument for gaming, or any intoxicating liquors. And any billiard room, bowling alley, race course, or other device or instrument for gaming, or any brothel or house of ill-fame, or place where intoxicating liquors are sold or furnished, except for medicinal or mechanical purposes, within one mile of the site of said university, is hereby declared a nuisance, and subject to abatement as such."

The revised charter of the City of Chicago, adopted on the 13th of

February, 1863, conferred the power to grant or refuse licenses for the sale of liquors within city limits on the mayor and city council.

At trial, judgment was entered against the appellant based upon a violation of the charter of the University of Chicago. Accordingly, appellant was ordered to abate the nuisance he had created. The Illinois Supreme Court reversed, and precisely set forth its analysis in terms of the doctrine of implied repeal. With respect to the *Dingman* facts the court stated:

> "In such a case, the rule that a law will not be repealed by implication, in doubtful cases, does not apply, as there is here a direct conflict between the former and latter law; and when there is a clear repugnance between two laws, and the provisions of both can not be carried into effect, the later law must prevail, and the former yield to the last expression of the legislative will. We regard these two provisions of law as falling within that predicament." (*Dingman v. People* (1869), 51 Ill. 277, 279.)

The "later law" was that encompassed by the charter of the City of Chicago and the court held that the enactment of this charter provision impliedly repealed the aforementioned provision of the University of Chicago charter.

The *Dingman* decision and the legal principles which form the basis of the doctrine of implied repeal compel us to place the disputed charter provision and the local option statute "side by side" for the purpose of determining whether they are irreconcilably inconsistent and clearly repugnant to each other. Only if a "clear repugnance" is found may we find that an implied repeal of section II of the first amendment to plaintiff's charter has occurred.

■■ The prohibition contained in the charter unquestionably applies to the sale of liquor by anyone within four miles of the location of Northwestern University. The local option statute (Ill. Rev. Stat. 1975, ch. 43, par. 110) unquestionably allows the City of Evanston to determine who, within Evanston, shall be a recipient of a liquor license. Consequently, a conflict exists. The charter provision prohibits the sale of liquor in any area of Evanston within four miles of Northwestern University and the local option statute gives Evanston the power to grant liquor licenses in Evanston, irrespective of location within Evanston. If we were to find that the charter provision and the local option statute were harmonious and not repugnant we would cause an anomalous situation to arise in which the power given to Evanston under the local option statute would be taken away by the Northwestern University Charter. We, therefore, cannot hold that the local option statute, as applied to Evanston, is operative throughout Evanston except for any

area within four miles of Northwestern University. The local option statute must be of uniform applicability throughout Evanston.

■■ Consequently, we find that section II of the first amendment to plaintiff's charter and the local option statute (Ill. Rev. Stat. 1975, ch. 43, par. 110) are not harmonious and are clearly repugnant to each other. Since the local option statute, with respect to the charter, is the later expression of law, the local option statute impliedly repeals section II of the first amendment to plaintiff's charter.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., concurs.

Mr. JUSTICE PUSATERI, concurring in part and dissenting in part: I concur with my colleagues that the trial court was correct in finding the existence of an "actual controversy" within the meaning of section 57.1 of the Illinois Civil Practice Act, but I respectfully dissent from their conclusion that the local option section of the Liquor Control Act repealed by implication section II of the first amendment to the charter of Northwestern University.

As to the first issue, the trial court specifically found that:

"* * * in light of the forfeiture provisions of Section 9 of the Charter of the Northwestern University that the University would be prejudiced by having to proceed at their peril and in their attempt to get a license and if such occurred without having a prior resolution of it * * *.

* * * I am finding that they do not have to apply for a license at their peril without having this preliminary matter resolved."

There is a policy of liberal justiciability underlying section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1) which was clearly articulated by the court in *Roberts v. Roberts* (1st Dist. 1967), 90 Ill. App. 2d 184, 234 N.E.2d 372, wherein it stated:

"* * * While the complaint on its face does not appear to plead an actual controversy, the Declaratory Judgment Act is to be liberally construed and not restricted by technicalities. *Central Ice Cream Co. v. Universal Leaseway System*, 20 Ill. App. 2d 145, 155 N.E.2d 324 (1959). We believe that there is an actual controversy in the instant case. *There are adverse legal interests. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds*

*of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status, damage plaintiff's pecuniary or material interests and establishes a condition of justiciability.* [Citation.]\* \* \*." (Emphasis added.) 90 Ill. App. 2d 184, 187.

In a very recent decision, *Howlett v. Scott* (1977), 69 Ill. 2d 135, 370 N.E.2d 1036, our supreme court further explained the meaning of actual controversy in the context of declaratory judgment actions when it stated:

"We have recently discussed the requirement of an actual controversy in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371. There we said:

' "Actual" in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]' (66 Ill. 2d 371, 375.)" (69 Ill. 2d 135, 141-42.)

In addition, the granting of declaratory relief is discretionary with the court. (*Antioch Community High School Teachers' Association v. Board of Education* (2d Dist. 1971), 2 Ill. App. 3d 504, 507, 275 N.E.2d 683.) The fact that Northwestern has not yet applied for and been granted a liquor license does not preclude it from seeking declaratory relief. The mere act of applying for such a license requires the University to act at its peril. Hence, there is a sufficient amount of uncertainty presently cast upon the University's status and legal rights to constitute an actual controversy.

A case factually similar to the instant case and illustrative of Northwestern's position is *Crest Commercial Inc. v. Union-Hall, Inc.* (2d Dist. 1968), 104 Ill. App. 2d 110, 243 N.E.2d 652. In that case the court was called upon to decide whether a restrictive covenant extended to a certain parcel of land prior to the execution of a lease. The court found that an actual controversy existed, despite the fact that the lease had not yet been executed. In so holding the court stated:

" 'It is not essential to a proceeding for declaratory judgment that there be a violation of a right, a breach of duty, or a wrong committed by one party against the other. The mere existence of a cloud, the denial of a right, the assertion of an unfounded claim, the existence of conflicting claims, or the uncertainty or insecurity

occasioned by new events may constitute the operative facts entitling a party to declaratory relief.' " 104 Ill. App. 2d 110, 115.

An examination of the other authorities cited by the defendant-appellants also fail to disclose any basis for requiring the plaintiff-appellee, Northwestern University, to place its charter in jeopardy in order to obtain a declaration of whether it may lawfully apply for a liquor license.

However, regarding the only substantive issue in this case, I disagree with the majority's affirmance of the trial court's finding that a general law, the local option section of the Illinois Liquor Control Act, impliedly repealed a special act, namely, the official charter of Northwestern University.

The local option section of the Illinois Liquor Control Act is general in nature and applies to every city, village and unincorporated town throughout the State of Illinois. This section grants these local governments the power to determine by ordinance or resolution the number, kind and classification of liquor licenses as well as the amount of local license fees. However, the special act involved in this case constitutes the charter granted to Northwestern in 1855 which has consistently been held to be a valid binding contract between the University and the State of Illinois. (See *People ex rel. Cook County Collector v. Northwestern University* (1972), 51 Ill. 2d 131, 281 N.E.2d 334; *In re Northwestern University* (1903), 206 Ill. 64, 69 N.E. 75; *Northwestern University v. Hanberg* (1908), 237 Ill. 185, 86 N.E. 734.) In the past, Northwestern has vigorously opposed any attempt made by outside parties to interfere in any manner with its charter, and in each instance, the validity of the charter provisions have been recognized and carefully protected by the courts. *Northwestern v. Hanberg; In re Northwestern University.*

The trial court in the instant case was also very concerned by what appeared-to be the first attempt by Northwestern to abrogate the provisions of its own charter, and the court so stated:

"* * * I must admit also that I an somewhat disturbed by the persistence of the University in seeking to have this Charter provision set aside.

It is remarkable to me that a university of the magnitude and stature of Northwestern, would seek to have their Charter tampered with or ruled upon in any way which may affect their rights.* * *

I am also somewhat disturbed because of the religious nature of the University, because of its longstanding relation with various denominations, because of its support of various religious organizations, and for many years since its very inception."

Moreover, I do not find the doctrine of repeal by implication to be applicable to the instant case. As our Supreme Court stated in *United States v. Borden Co.* (1939), 308 U.S. 188, 198-99, 84 L. Ed. 181, 190-91, 60 S. Ct. 182:

> "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. *United States v. Tynen,* 11 Wall. 88, 92; *Henderson's Tobacco,* 11 Wall. 652, 657; *General Motors Acceptance Corp. v. United States,* 286 U.S. 49, 61, 62. The intention of the legislature to repeal 'must be clear and manifest.' *Red Rock v. Henry,* 106 U.S. 596, 601, 602. It is not sufficient, as was said by Mr. Justice Story in *Wood v. United States,* 16 Pet 342, 362, 363, 'to establish that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative, or auxiliary.' There must be 'a positive repugnancy between the provisions of the new law, and those of the old; and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy.' See also *Posadas v. National City Bank,* 296 U.S. 497, 504."

The court in *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, 529, 39 N.E.2d 26, 37, further expounded upon this by stating:

> "In determining whether one statute is repugnant to another the court should consider its several parts in connection with correlated sections *in pari materia.* [Citation.] The repeal by implication of one act by a later act is not effected by mere conflicts or inconsistencies between them, but only where the carrying out of the later act prevents the enforcement *of any part* of the former. To the extent they are in conflict the first act is repealed, but the parts of the first act not affected remain in full force and effect." (Emphasis added.)

A necessary corollary to this principle is the presumption that a prior special act is intended to remain in force and effect as an exception to a later repugnant general act. *Ralston Purina Co. v. Killam* (1973), 10 Ill. App. 3d 397, 402-03, 293 N.E.2d 750.

A clear illustration of this principle is found in *Rosehill Cemetery v. Lueder* (1950), 406 Ill. 458, 94 N.E.2d 342. This case is also cited by the majority for the general rule of implied repeal, and specifically that implied repeal results where some enactment cannot be harmonized with the terms and necessary effect of an earlier act, and the last expression of the law prevails since it cannot be presupposed that the lawmaking power intends to contradict and enforce laws which are contradictions. *Rosehill* however, is also demonstrative of a situation factually analogous to the

instant case where our supreme court refused to apply the doctrine of repeal by implication. In *Rosehill*, it was contended that even though the cemetery was incorporated under a special legislative act, that the later Cemetery Care Act repealed by implication the provisions of the cemetery's charter with respect to the control and investment of its perpetual care funds. The court rejected this contention wherein it stated:

> "Rosehill Cemetery Company has by its charter been given rights which have been recognized by this court on many occasions. Its charter has been referred to as a contract in [citations]. And it has also been held that its rights were not changed by the adoption of the constitution of 1870. [Citation.]
> \* \* \*
>
> The General Assembly must have been cognizant of the powers of appellant and other cemeteries created by special acts of the legislature, and if it was its intention to limit the powers of the Rosehill Cemetery Company, or to repeal in part the provisions of the act of its incorporation, some reference would have been made to same, or other action taken,\* \* \*." 406 Ill. 458, 471.

In addition, our supreme court has held that the doctrine of repeal by implication is a mere canon of construction which "should never be followed to the extent of defeating or overriding the definite intent of the legislature." (*People ex rel. Dickey v. Southern Ry. Co.* (1959), 17 Ill. 2d 550, 554, 162 N.E.2d 417, 420.) Certainly, the legislative grant of power to local entities to regulate the sale of liquor does not manifest a clear legislative intent to remove the specific restraint on liquor sales on campus which was imposed upon Northwestern by the special legislation incorporating it as a tax exempt institution. Taking into account the longstanding judicial history of concern which has prevented any encroachment upon Northwestern's charter, it is neither logical nor conceivable that the General Assembly would repeal this provision in so vague a manner.

The majority further places great reliance upon *Dingman v. People* (1869), 51 Ill. 277, for the invocation of the doctrine of repeal by implication to the instant case. However, this case is clearly distinguishable. In *Dingman,* the court found that a liquor license could be issued within a one-mile buffer zone set up in the University of Chicago's charter, since a later charter to the City of Chicago gave the City the power to license within its limits. Hence, in that case, a later special act, the City's charter impliedly repealed a prior special act, a provision of the University of Chicago's charter. Therefore, if the instant case involved a special legislative grant to the City of Evanston, then *Dingman* would be authority for finding that the corporate charter of

Northwestern University had been repealed on the basis of an irreconcilable inconsistency. Under the instant facts, this decision is inapposite.

There are many ramifications and consequences flowing from the initial repeal of the liquor prohibition and subsequent sale of liquor by Northwestern on campus, involving major considerations such as taxation and liability problems. While I believe it proper for Northwestern to desire a change or modification of its charter in this regard, I feel that matters of such importance should be decided directly and forthrightly by the legislature and not by the courts through utilization of the doctrine of implied statutory repeal.

For the foregoing reasons, I would reverse the decision of the trial court and would find that section II of the first amendment of Northwestern's charter has not been repealed by implication.