THE SANITARY DISTRICT OF DECATUR et al., Plaintiffs-Appellees, v. THE POLLUTION CONTROL BOARD, Defendant-Appellant.

Fourth District   No. 14988

Opinion filed November 8, 1978.—Rehearing denied January 11, 1979.

William J. Scott, Attorney General, of Chicago (William J. Barzano, Jr., Assistant Attorney General, of counsel), for appellant.

Edward Booth and R. Nicholas Burton, both of Greanias, Booth, Greanias & Burton, of Decatur, for appellees.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant, the Illinois Pollution Control Board (PCB) appeals from a declaratory judgment entered by the circuit court of Macon County upon the complaint of plaintiffs, the Sanitary District of Decatur (District) and the City of Decatur (City), both municipal corporations. The judgment declared that by operation of section 38 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1038), City and District had a variance for one year from November 23, 1977, to perform certain

construction in a manner they had requested in a petition for a variance previously filed with PCB.

Section 38 of the Act provides that if PCB fails to take "final action" upon a petition for variance within 90 days after the petition is filed, the petitioner may deem the variance granted for a period not to exceed one year.

Plaintiffs' complaint for declaratory judgment stated that: (1) a petition for a variance for construction of a project called the McKinley Avenue Diversion Control Facility modification had been filed with PCB on August 24, 1977; (2) on October 13, 1977, PCB set the petition for hearing on December 19, 1977; (3) on November 9, 1977, PCB dismissed the petition with leave to refile; (4) on November 20, 1977, the 90-day period expired; (5) PCB contends that the dismissal of the petition was final action; (6) District and City contend that the dismissal was not final action and that a variance was in effect; (7) an actual controversy existed; and (8) District and City would be subject to substantial monetary penalties by proceeding if a variance was not in effect, and large sums of money were involved in the project.

PCB filed a motion to dismiss the complaint asserting that the circuit court did not have jurisdiction because: (1) sovereign immunity barred entry of a declaratory judgment against a state agency; (2) "special jurisdictional restrictions" barred the granting of relief requested; (3) plaintiffs had failed to exhaust administrative remedies; and (4) declaratory relief was sought in a fashion not contemplated by legislation providing for declaratory judgments. The court denied the motion. The Board stood on its motion and declined to plead further. The complaint was then taken as confessed by default and the declaratory judgment was entered.

Similar contentions are made by PCB on appeal.

PCB stresses that (1) by virtue of section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), appeals from its final orders lie directly to this court, and (2) before seeking other relief, a party to an administrative proceeding is required to exhaust its administrative remedies. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) PCB asserts that the filing of the complaint for declaratory judgment in the circuit court was (1) an attempt to appeal to that court although it had no jurisdiction of such an appeal, and (2) premature because plaintiffs had not exhausted their administrative remedies under PCB Procedural Rule 333. That rule provides that any party may, within 35 days after adoption of a final PCB order, move for rehearing, modification, or vacation of any final order, or for other relief.

The difficulty with PCB's theory that the complaint is an improper

attempt to appeal is that plaintiffs were not attempting in the circuit court to reverse, overturn, or set aside the order of dismissal but to determine whether it prevented the creation of a variance which would otherwise have resulted from the failure of PCB to take "final action" on plaintiffs' petition for a variance within 90 days. Had plaintiffs prevailed on such an appeal, the ruling of the appellate tribunal would be to reinstate the petition rather than to declare the existence of a variance.

For the same reasons, administrative relief vacating or modifying the order of dismissal would not answer the question of whether plaintiffs had a variance. No authority is cited ruling that a declaration of rights or other order similar to a declaratory judgment is included in the "other relief" provided for by Procedural Rule 333.

Furthermore, plaintiffs' theory that they have a variance by operation of law is predicated upon their assertion that the order of dismissal was *not final*. To either appeal to this court or to seek relief under Procedural Rule 333, they would have to take the position that the order was *final*. A ruling by this court on a direct appeal or by PCB upon a request for Rule 333 relief that the dismissal order lacked the finality necessary to give the court or tribunal jurisdiction to proceed might indirectly also determine that the dismissal order was not "final action" within the meaning of section 38 of the Environmental Protection Act. However, parties are not required to seek a determination of their rights in such a devious manner.

Defendant PCB relies heavily on *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 357 N.E.2d 430, where plaintiffs sought to enjoin, on double jeopardy grounds, separate administrative prosecutions brought against them before PCB arising out of the same emissions of stored chemicals. The supreme court ruled that the plaintiffs were required to exhaust their administrative remedies because (1) the issues raised in the chancery case could have been raised in the administrative proceeding, and (2) the detriment claimed by plaintiffs to arise from the administrative proceedings did not qualify as an exception to the exhaustion of administrative remedies doctrine. Here, no administrative procedure was shown to be available to afford plaintiffs the relief sought in their declaratory judgment complaint.

■■ Plaintiffs' complaint for declaratory relief in the circuit court constitutes neither an attempt to appeal to that court nor a failure to exhaust administrative remedies.

■■ In order for a complaint to set forth grounds for declaratory relief it must set forth the existence of an actual justiciable controversy. In *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300-01, the supreme court recently stated:

" 'Actual' in this context does not mean that a wrong must have

been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]"

The foregoing was even more recently restated in *Howlett v. Scott* (1977), 69 Ill. 2d 135, 141-42, 370 N.E.2d 1036, 1038.

In *Underground Contractors Association,* the plaintiff association sued to have the city's procedure for awarding certain contracts declared to be invalid. The supreme court ruled the complaint to have been properly dismissed because none of the members of plaintiff's association were stated to have either (1) lost a contract because of the operation of the challenged procedure, or (2) wished to bid on a contract covered by the rule and on which bids were to be placed. Thus, they had no standing to sue. That court did not state whether the existence of the procedures and the claim that they were illegal gave rise to an actual controversy that would give rise to a right for declaratory relief to one having standing.

In *Northwestern University v. State of Illinois* (1977), 56 Ill. App. 3d 305, 371 N.E.2d 1046, the plaintiff university sought declaratory relief that a statute had impliedly repealed a provision in its State charter which prohibited the sale of liquor. The appellate court affirmed the trial court's grant of declaratory relief. The opinion stated that the plaintiff would likely need a liquor license from the city and if it had attempted to sell liquor would have been subject to prosecution for forfeiture of its charter. It then stated:

"Plaintiff need not act at its peril prior to seeking declaratory relief. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status damages plaintiff's pecuniary or material interests and establishes a condition of justiciability. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372. *Accord, St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51." 56 Ill. App. 3d 305, 308, 371 N.E.2d 1046, 1048.

■■ In the case on review, the complaint set forth a "concrete dispute" as to whether plaintiffs had a temporary variance for one year. The court was obviously in a position to give a "definitive determination of the

parties' rights." The resolution of the question of the existence of the temporary variance was likely to aid in the termination of the variance proceedings before PCB and could have eliminated plaintiffs' need for any further variance. The complaint alleged that the Environmental Protection Agency considered no variance to have arisen by operation of law. As in *Northwestern University v. State of Illinois*, the complaint inferred that the plaintiff would be likely to be prosecuted if it proceeded in the absence of a variance. The complaint set forth an actual, justiciable controversy and plaintiffs had standing to seek declaratory relief with reference to it.

■■■ Finally, PCB claims sovereign immunity as a bar to the action. Except as the legislature may provide by law, sovereign immunity was abolished by article XIII, section 4, of the Illinois Constitution of 1970. The effect of the subsequent enactment of "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1977, ch. 127, par. 801) was to restore the immunity of the State of Illinois to the extent that it existed prior to the new constitution (*City of Springfield v. Allphin* (Docket No. 49897, Oct. Term 1978), ___ Ill. 2d ___, ___ N.E.2d ___). That immunity is not absolute, but depends upon the issues involved and the relief sought. (*E. H. Swenson & Son, Inc. v. Lorenz* (1967), 36 Ill. 2d 382, 223 N.E.2d 147.) Where the relief sought involves the recognition and foreclosure of a lien on State-owned land, immunity exists. (*Schwing v. Miles* (1937), 367 Ill. 436, 11 N.E.2d 944.) On the other hand, no immunity exists when the relief sought is (1) a declaration that State officers may not withhold sums due on a contract on the invalid claim that the money is owed the State as a tax (*E. H. Swenson & Son, Inc.*), or (2) an injunction preventing State officers from otherwise acting beyond their authority. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223.) Here, no attempt to enforce a claim against State monies or other property was involved. District and City sought by their complaint to obtain a declaration that they had a valid variance enabling them to perform certain construction. The declaration of the existence of the variance would constitute a declaration that defendant PCB would be beyond its authority in acting to prevent plaintiffs from performing construction consistent with the variance. The doctrine of sovereign immunity did not prevent the complaint from stating a cause of action.

Defendant does not argue that its order of dismissal was, in fact, final action. The trial court properly denied the motion to dismiss and properly entered the declaratory judgment. We affirm.

Affirmed.

REARDON and TRAPP, JJ., concur.