(No. 48929.—

MICHAEL J. HOWLETT, Appellee, v. WILLIAM J. SCOTT, Attorney General, Appellant.

*Opinion filed November 30, 1977.*

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Imelda R. Terrazino, Assistant Attorneys General, and Samuel W. Witwer, Special Assistant Attorney General, of Chicago, of counsel), for the People.

Kirkland & Ellis, of Chicago (Don H. Reuben, Thomas F. Ging, and William P. O'Neill, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

During the early months of 1976, Daniel Walker, then Governor of Illinois, and Michael J. Howlett, then Illinois' Secretary of State, were candidates for the nomination of the Democratic party for the office of Governor, and

Ronald E. Stackler, previously appointed by Governor Walker as Director of the Illinois Department of Registration and Education and then on leave from that office, was a candidate for the same party's nomination as Attorney General. William J. Scott, Attorney General of Illinois, was a candidate for the nomination of the Republican party for the office of Attorney General.

Michael J. Howlett had been employed as a full-time executive by Sun Steel Company from 1952 until his election as Auditor of Public Accounts of this State in 1960, at which time he resigned from his position as vice-president of the company. During the years he served as Auditor and Secretary of State he received $15,000 per year from Sun Steel Company for his services as a consultant. Receipt of that compensation was disclosed by him in each of his annual reports filed with the State Board of Ethics (Ill. Rev. Stat. 1975, ch. 127, par. 604A—101(b)).

Subsequent to Secretary Howlett's election as Secretary of State in 1972, new legislation created the Vehicle Recycling Board, of which the Secretary of State was to serve as chairman. (Ill. Rev. Stat. 1975, ch. 95½, par. 4—300 *et seq.*) This board is primarily concerned with the efficient removal of abandoned vehicles from highways and streets and with the wrecking, salvaging and recycling thereof. Sun Steel Company is wholly owned by M. S. Kaplan Company, which also wholly or partially owns or controls several other steel companies engaged in various phases of the steel industry. The principal business of the Kaplan companies involves scrap iron and steel, a major source of which is abandoned, wrecked or obsolete automobiles which have been junked.

Prior to the March primary election, Director Stackler publicly charged that the receipt by Secretary Howlett of the $15,000 per year during his years as Auditor (1962-1972) and Secretary of State (1972-1976) consti-

tuted a conflict of interest entitling the State of Illinois to recover those funds from the Secretary. Governor Walker supported Director Stackler's charges and publicly demanded that Attorney General Scott institute a civil action against Secretary Howlett to recover the payments for the benefit of the State. Considerable publicity was given the charges and demands in the news media, and on February 5 Attorney General Scott announced the appointment of a retired former member of this court, Charles H. Davis, "to head up an independent team to determine whether there is any legal basis for Governor Daniel Walker's suggestion that a civil recovery suit be considered regarding Secretary of State Michael J. Howlett's position with Sun Steel." Mr. Justice Davis died several weeks later, and on March 4 the Attorney General announced the appointment as a Special Assistant Attorney General of Marvin F. Burt, a former circuit judge who at one time had been assigned to service on this court, to carry out the original purpose. That announcement stated "the report is to be made public by Judge Burt as soon as it is completed."

The completed 41-page report was delivered to the Attorney General on July 19, 1976. It was based substantially on the facts as given by Secretary Howlett and Governor Walker, both of whom cooperated fully during the investigation. The report recited in detail the factual background concerning the charges against the Secretary earlier summarized herein. It discussed three issues, concluding that no conflict of interest existed while Secretary Howlett was Auditor. It also concluded that there was an "evidentiary stalemate" on the question of the Secretary's involvement with and support for two pieces of legislation which would have reduced the costs of some scrap processors in junking automobiles. The report did conclude, however, that a conflict of interest arose when Secretary Howlett, in performing his official duties, became chairman of the Vehicle Recycling Board. (While

not used, the Board had available to it large sums of money which it could use to subsidize private enterprise in removing and recycling automobiles.) The report recommended that the Attorney General delay action until this court had completed its review of two recent appellate court decisions on which the report's conclusions were substantially based. The Attorney General released this report to the news media on July 20, 1976, with a summary reiterating the recommendation that action be delayed.

Two days later Secretary Howlett filed in the circuit court of Cook County his complaint for declaratory judgment naming the Attorney General as defendant and alleging that the controversy first arose when the Attorney General announced his intention to appoint a special assistant to investigate the charges; that plaintiff had completely responded to all inquiries by the investigator; that the report concluded a conflict of interest existed but recommended that legal action await the outcome of cases pending before this court; that the report was publicly released and that the timing of the release caused substantial publicity unfavorable to plaintiff and cast a shadow of suspicion over him and his campaign, endangering his right to be a candidate for public office; and that threats of an imminent suit created an immediate and irresolvable controversy over plaintiff's right to retain his consulting fees. A copy of the report was annexed to the complaint, which prayed for a declaration that no conflict of interest existed and that plaintiff was entitled to retain all annual payments received by him from Sun Steel.

On July 28, 1976, plaintiff filed a motion for summary judgment which alleged that he did not dispute any of the material facts set forth in the report, and that there was no genuine issue of fact. The Attorney General moved to dismiss the complaint on August 16, alleging *inter alia* that the complaint did not present a justiciable

matter, *i.e.*, it sought an advisory opinion; and that no actual justiciable controversy then existed. The motion to dismiss was denied and an answer filed on August 27 denying certain allegations and demanding strict proof of others. A counterclaim was also filed against Secretary Howlett, joining M. S. Kaplan Company and Sun Steel as additional parties, seeking a declaration that Secretary Howlett held the payments received by him from M. S. Kaplan Company and its affiliates, while he was Secretary of State, as constructive trustee for the public and seeking a full accounting. The counterclaim alleged that plaintiff's receipt of those payments breached his fiduciary obligation to the public.

Plaintiff moved to dismiss the counterclaim on September 1, and that motion, together with plaintiff's motion for summary judgment, was allowed one week later. We granted the Attorney General's motion for direct appeal to this court under Rule 302(b) (58 Ill. 2d R. 302(b)).

While the parties have briefed and argued the merits of defendant's counterclaim, in our view it is necessary to discuss only the propriety of the trial court's denial of the motion to dismiss the complaint for declaratory judgment.

Our statute authorizing declaratory judgment actions permits declaratory relief only in justiciable cases, and the existence of an actual controversy is essential. (Ill. Rev. Stat. 1975, ch. 110, par. 57.1.) We have recently discussed the requirement of an actual controversy in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371. There we said:

> " 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal

advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.] " (66 Ill. 2d 371, 375.)

In our judgment, the plaintiff's action was brought prematurely. It is entirely clear that no actual controversy existed on July 21. An investigative report by an assistant to his supervisor ordinarily cannot serve to create an actual controversy or justiciable matter prior to some indication by the supervisor as to the course of action he intends to take. (*Gromer Supermarket, Inc. v. Pollution Control Board* (1972), 6 Ill. App. 3d 1036.) There was no indication by the Attorney General of an intent to prosecute a constructive trust action against the Secretary of State. No such intent can be inferred from the recommendations contained in the interim, investigative report made by the special assistant, particularly when that report expressly states that its findings that a conflict of interest existed are bottomed upon two appellate court decisions "providing somewhat new applications of equitable principles" and recommends that any further action await the outcome of those cases which were then pending before this court.

The Federal declaratory judgment statutes, like our statute, make the grant or denial of declaratory relief discretionary with the court. (*Eccles v. Peoples Bank* (1948), 333 U.S. 426, 92 L. Ed. 784, 68 S. Ct. 641.) The Joint Committee Comments upon our declaratory judgment statute expressly state the intent that "the granting or denying of declaratory relief even when the controversy or some part thereof will be settled thereby is discretionary with the court." (Ill. Ann. Stat., ch. 110, par. 57.1, Joint Committee Comments, at 131 (1968).) That intent is

reflected in the first sentence of subsection (1) of the statute stating that the court *"may,* in cases of actual controversy, make binding declarations of rights." (Emphasis added.) A sound exercise of judicial discretion would appear to us to necessitate dismissal of a complaint seeking a declaration of rights which were dependent upon the decision of then pending but undecided cases. Such a complaint does not "present a concrete dispute admitting of an immediate and definitive determination of the parties' rights" as *Underground Contractors Association* requires (66 Ill. 2d 371, 375). Dictating a similar result are those cases indicating the unsuitability, ordinarily, of declaratory judgment actions in areas where the law is in a developmental state (see, *e.g., United States v. Cincinnati Transit, Inc.* (S.D. Ohio 1972), 337 F. Supp. 1068), as the assistant Attorney General's report indicated was true here. Relevant, too, is the fact that Secretary Howlett had terminated his relationship with Sun Steel and whatever rights existed were fixed. Normally, a declaration of nonliability for past conduct is not a function of the declaratory judgment statute (see *Cunningham Brothers, Inc. v. Bail* (7th Cir. 1969), 407 F.2d 1165, 1169, *cert. denied* (1969), 395 U.S. 959, 23 L. Ed. 2d 745, 89 S. Ct. 2100; *Hanes Corp. v. Millard* (D.C. Cir. 1976), 531 F.2d 585), for in those cases a potential defendant's institution of a declaratory action deprives the potential plaintiff of his right to determine whether he will file, and, if so, when and where. Finally, because the status of plaintiff's conduct could not have been determined with certainty, as earlier noted, any judgment entered would at best have been an advisory opinion, and Illinois judges have no authority to issue advisory opinions. *28 East Jackson Enterprises, Inc. v. Rosewell* (1976), 65 Ill. 2d 420, 426; *Exchange National Bank v. County of Cook* (1955), 6 Ill. 2d 419, 422.

For the reasons stated, we hold the motion to dismiss

the complaint should have been allowed.

We do recognize the practical campaign difficulties confronting Secretary Howlett when the Governor and Director made the charges and when the later report was publicly released. Unfortunately, political campaigns frequently subject candidates to criticisms which cannot be adequately, if at all, answered within the available time limitations. But, even assuming that a declaratory judgment procedure could conceivably be an appropriate means of resolving problems such as these, it is completely clear that it is not an appropriate method in this case where the rights of the parties were dependent on future decisions by this court and were not, at the time of the trial court action, susceptible of accurate determination. The prejudice to a candidate for public office which may result from charges of improper conduct, and the candidate's inability to secure a final determination of the propriety of those charges prior to the election in which he is a candidate, may well be unavoidable in our system of government, which is dependent largely on the force of an informed public opinion as to the quality of government service rendered by public officials, and free and unfettered action by the public's representatives. *Barr v. Matteo* (1959), 360 U.S. 564, 572, 3 L. Ed. 2d 1434, 1444, 79 S. Ct. 1335, 1342 (Black, J., concurring); *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710; *Blair v. Walker* (1976), 64 Ill. 2d 1, 11.

The pleading chronology and representations in the defendant's briefs indicate that the counterclaim was filed only because the trial court denied the defendant's motion to dismiss. In fact, had the trial court ruled properly and dismissed the complaint, a counterclaim could not have been filed. (*Ford v. Ford* (5th Cir. 1938), 100 F.2d 227.) Accordingly, it is unnecessary to discuss the merits of the trial court's ruling on the motion to dismiss the counterclaim. *People v. American National Bank & Trust Co.*

(1965), 32 Ill. 2d 115, 119.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County, and remand the cause with directions to vacate its September 8 judgment order and to allow the motion to dismiss the complaint and dismiss the proceedings.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE DOOLEY, dissenting:

This proceeding has its genesis in our recent gubernatorial campaign. The majority opinion aptly describes the political nature of this case.

That the litigation lost its vitality with the election is obvious from the proceedings before this court. Counsel representing both parties have waxed eloquent in their description of Michael J. Howlett the man, and Michael J. Howlett the long-time servant of the public with an admirable record for integrity and capability as a public official.

It would seem rigor mortis overtook what issues there were in this case on election day, November 2, 1976. This cause ought to be interred.

I would dismiss the proceedings as moot.