(Nos. 52164, 52184, 52233 cons.—

GLEN E. MILLER, Appellant, v. THE COUNTY OF LAKE *et al.*, Appellees.—THE PEOPLE *ex rel.* DENNIS P. RYAN, Appellee and Cross-Appellant, v. WHEELING TRUST & SAVINGS BANK *et al.*, Appellants and Cross-Appellees.

*Opinion filed March 28, 1980.—Rehearing denied May 29, 1980.*

MORAN, J., took no part.

Wasneski, Kuseski, Flanigan & Dixon, of Waukegan (Alfred W. Lewis, of counsel), for appellant Glen E. Miller.

Crowley, Barrett & Karaba, of Chicago (Edward W. Barrett and Frank A. Karaba, of counsel), for appellant and cross-appellee Wheeling Trust & Savings Bank.

Dennis P. Ryan, State's Attorney, of Waukegan (Marc

P. Seidler and William J. Blumethal, Assistant State's Attorneys, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The apparently undisputed facts in this case are that plaintiff Glenn E. Miller took office as a member of the county board of Lake County (the board) on December 2, 1974. He owned between 1% and 2% of the capital stock of the Wheeling Trust & Savings Bank (the bank) and served as one of its directors. Also, he served as president of the Wheeling Safety Deposit Building Corporation, a subsidiary of the bank. During the period relevant to this litigation the county treasurer of Lake County repeatedly requested the county board, pursuant to the provisions of the County Funds Depository Act (Ill. Rev. Stat. 1975, ch. 36, par. 17 *et seq.*), to designate the Wheeling bank, among many others, as an approved depository for the funds under the treasurer's control. The board did so. With one exception, plaintiff participated in those board votes. In addition he voted against amendments designed to remove the bank as an approved depository. Following adoption at an August 1975 board meeting of an amendment eliminating the Wheeling bank from the list of approved depositories, plaintiff apparently moved at the September meeting to reconsider the August action and the bank was reinstated on the approved list by a one-vote margin. It is alleged in an admitted allegation that "[t]his same procedure was employed at the January and February, 1976 ***" board meetings.

The Wheeling bank, while located in Cook County, is near the Lake County line and had been used as an approved depository for Lake County funds for some years before plaintiff was elected to the Lake County board. Although apparently no reference was made to plaintiff's interest in the bank during the depository-

designating proceedings, plaintiff's stock in the bank was listed in his disclosure statements filed with the Lake County clerk. It seems to be agreed that all banks in Lake County and some in the surrounding counties were regularly designated as approved depositories. It is also undisputed that the amounts of Lake County funds on deposit in the Wheeling bank decreased after plaintiff's election, and that the rates paid the county by the bank were competitive and in some instances higher than the rates paid by other banks. It is not contended that plaintiff had attempted to persuade the Lake County treasurer to place funds in the Wheeling bank.

The State's Attorney of Lake County, apparently responding to an inquiry from a board member, issued a formal opinion indicating that plaintiff's conduct constituted a violation of section 3 of what was then the Corrupt Practices Act (Ill. Rev. Stat. 1975, ch. 102, par. 3). He had also indicated an intention to institute a criminal prosecution against plaintiff and a civil action against the bank.

On July 13, 1977, plaintiff filed a complaint for a declaratory judgment and injunctive relief naming the County of Lake, the State's Attorney, and the Wheeling bank as defendants. Alleging the existence of an actual controversy, plaintiff sought a declaratory judgment that his conduct did not violate the Corrupt Practices Act, and that the deposit contracts between the bank and the county treasurer were valid; he also sought an injunction restraining the State's Attorney from instituting either criminal or civil action against plaintiff or the bank.

One week later the State's Attorney filed a complaint alleging plaintiff's stock ownership, his participation in the proceedings designating the Wheeling bank as an approved depository, and that the deposit contracts were void. An accounting by the bank was sought for the profits earned on the Lake County deposits in excess of the interest paid the county. During the period in question those

deposits aggregated some $26 million. The maximum on deposit at any one time approximated $2 million, and the maturities ranged from 2 to 90 days. Plaintiff, the county treasurer and the bank were named as defendants.

The State's Attorney first answered and then moved to dismiss plaintiff's complaint, and the bank and county treasurer moved to dismiss the State's Attorney's complaint. Plaintiff moved for summary judgment on his complaint. The trial court consolidated the actions and found in a memorandum opinion that there was an actual controversy, no issue of fact, and that plaintiff's participation in the board action designating the bank as a depository did not violate the Corrupt Practices Act. Concluding that the contracts were valid, the trial judge granted plaintiff's motion for summary judgment and allowed the motions to dismiss the State's Attorney's complaint.

On appeal the appellate court affirmed the existence of an actual controversy but reversed and remanded for an evidentiary hearing to determine whether the board designation of depositories was a "perfunctory act" and "likely to remain so in the future." (71 Ill. App. 3d 478, 484.) If the trial court so found, section 3 was to be declared inapplicable and the contracts valid. If, however, the designation were found to be other than "purely perfunctory," the Act was to be applied, the contracts held void and an accounting ordered. The refusal of the appellate court to adopt a *per se* rule was in part due to its belief that county boards in some counties traditionally approved all banks suggested by the treasurer, never suggesting change. In such circumstances, that court reasoned, section 3 was not violated by a shareholder board member's participation.

The existence of an actual controversy is again questioned here. Contending that plaintiff's action for a declaratory judgment and injunction seeks only judicial examination of an opinion issued by the State's Attorney

and of past conduct, the State's Attorney argues that no actual controversy is present.

In explaining what is contemplated by the requirement of an "actual controversy" in our declaratory judgment statute (Ill. Rev. Stat. 1975, ch. 110, par. 57.1), this court has stated:

> " ' "Actual" in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]' " (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 141-42; quoting, *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375.)

We have concluded, in other words, that the " 'actual controversy' requirement is meant merely to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties." *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 452, citing *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 524.

In our view, plaintiff's action presents such a concrete dispute and is distinguishable from the actions dismissed in *Howlett* and *Fitzgerald v. County of Kane* (1974), 58 Ill. 2d 112. In *Fitzgerald* an action for declaratory judgment by a county treasurer sought invalidation of

contracts of deposit made with certain banks in which particular members of the county board allegedly owned shares of stock. Because of the apparent availability of other banks designated as county depositories and since the banks whose deposits were challenged had not been joined as defendants, this court held that the county treasurer sought only an advisory opinion.

The suit for declaratory judgment in *Howlett* was based on an investigative report by an assistant to his supervisor without any indication by the supervisor as to the course of action he intended to take. This court ruled that the action had been brought prematurely and that any judgment entered would have been at best an advisory opinion. It was further held that the termination of the relationship forming the basis of the suit rendered recourse through the declaratory judgment statute inappropriate since it was not designed to provide mere declarations of nonliability for past conduct. See *Howlett v. Scott* (1977), 69 Ill. 2d 135, 143; see also *Cunningham Brothers, Inc. v. Bail* (7th Cir. 1969), 407 F.2d 1165, 1169, *cert. denied* (1969), 395 U.S. 959, 23 L. Ed. 2d 745, 89 S. Ct. 2100; *Hanes Corp. v. Millard* (D.C. Cir. 1976), 531 F.2d 585.

The circumstances involved in the present action are entirely distinguishable. The State's Attorney, as the county's chief prosecuting authority, issued a formal written opinion indicating plaintiff's conduct contravened section 3 of the Corrupt Practices Act. He also informed plaintiff's counsel of his intention to institute civil proceedings for an accounting against the bank and to prosecute plaintiff for his alleged violation of section 3. These circumstances, together with the continuation of the relationship forming the basis of the suit, convince us that an actual controversy exists and that the motion to dismiss the complaint was properly denied.

Whether the contracts of deposit entered into between

the county treasurer and the bank are void as a result of plaintiff's participation in the county board action designating the bank as a qualified depository depends upon the interpretation of section 3 of the Corrupt Practices Act. That section then provided:

"No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void." (Ill. Rev. Stat. 1975, ch. 102, par. 3.)

It is conceded that certain amendments to the Act, which became effective on October 1, 1977, and which provided special exculpatory procedures for members of governing bodies with less than 5% (now 7½%) of the total ownership interest in approved depositories, are not relevant to the contracts of deposit here under examination.

Plaintiff and the bank argue that in voting to include the bank on the list of approved depositories of county funds, plaintiff, as a stockholder and director of one bank, did not "act or vote" with respect to the prospective contracts of deposit. Board approval, however, occurs only if and when requested by the county treasurer, and the deposit of funds by a county treasurer in banks designated as depositories by the county board relieves him of responsibility for the funds while they are so deposited. (Ill. Rev. Stat. 1975, ch. 36, pars. 20, 34; *Fitzgerald v. County of*

*Kane* (1974), 58 Ill. 2d 112, 116.) While a county treasurer "has the sole and complete responsibility to decide in which bank, if any, he will deposit public funds which are in his custody" (*Fitzgerald v. County of Kane* (1974), 58 Ill. 2d 112, 115-16, citing *People ex rel. Nelson v. West Englewood Trust & Savings Bank* (1933), 353 Ill. 451), the fact that the statute relieves him of responsibility for deposits in board-approved depositories is a persuasive, if not a compelling, incentive for a county treasurer to deposit funds only in such banks. Realistically viewed, county treasurers are not ordinarily going to deposit funds under their control in unapproved institutions. Consequently, prior board approval of a bank becomes an integral factor in any deposit contract between that bank and the treasurer.

The statutory prohibition in section 3 could scarcely be broader. It prohibits a public officer from being "*in any manner interested *** in any contract *** in the making or letting of which such officer may be called upon to act or vote.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 102, par. 3.) In *Brown v. Kirk* (1976), 64 Ill. 2d 144, 151, this court reversed an unduly narrow reading of section 3 by the appellate court, and observed: "Like most other conflict of interest provisions, it is aimed not only at the actual bad faith abuse of power for an officer's own personal benefit, but is also designed to prevent the creation of relationships which carry in them the potential of such abuse, by removing the possibility of temptation." Again, in *People v. Savaiano* (1976), 66 Ill. 2d 7, 15, this court construed section 3 as barring an official not only "from having a private interest in situations in which a binding contract exists but also from allowing himself to be placed in a situation where he may be called upon to act or vote in the making of a contract in which he has an interest. The evil exists because the official is able to influence the process of forming a contract."

It might appropriately be questioned whether the sweeping prohibitions of section 3, combined with the severity of the potential penalty for its violation, were not destined to be counterproductive, but the wisdom of, or necessity for, those provisions is not our concern. Competent individuals owning insignificant amounts of stock in business entities could well be deterred from public service by the possibility that their mere presence upon a county board or city council might expose them to the possibility of prosecution. Whether for this reason or some other, the General Assembly concluded that modification was necessary and amended the statute to exempt those situations in which the interest owned was less than 5% (now 7½%). But even under the amended statute the interested member must disclose his interest and abstain from voting on the contract.

It is undisputed that plaintiff, a shareholder and director of the Wheeling bank, as well as a member of the county board, voted to designate the bank as a depository of county funds; he twice voted against amendments eliminating the bank from the list of approved depositories, and, after the board's approval of those amendments, he introduced a motion to reconsider which carried by one vote. Because that designation was, in reality, essential to the bank's receipt of county funds, we are constrained to hold that plaintiff's supportive conduct while he was interested in that bank, at least as its shareholder and director, violated the broad statutory proscription of section 3. Accordingly, under the express language of that section the contracts of deposit are void.

The bank argues that it should not be subjected to an accounting of the profits from the void contracts, primarily because section 3 did not explicitly provide for such a civil remedy and since the bank allegedly did not engage in any wilful misconduct. That the Act did not specifically authorize an accounting has not prevented this

court from ordering such a remedy to permit the recovery of benefits acquired through contracts invalidated by operation of section 3. (*Peabody v. Sanitary District* (1928), 330 Ill. 250, 264.) The applicability of section 3, moreover, has not been contingent upon a showing of intentional wrongdoing or bad-faith dealing by the public officer or corporation in which he holds a proscribed interest. (See *Brown v. Kirk* (1976), 64 Ill. 2d 144, 151; *People ex rel. Pearsall v. Sperry* (1924), 314 Ill. 205, 209-10; see also *United States v. Mississippi Valley Generating Co.* (1961), 364 U.S. 520, 549-50, 5 L. Ed. 2d 268, 288, 81 S. Ct. 294, 309; *Stigall v. City of Taft* (1962), 58 Cal. 2d 565, 569-71, 375 P.2d 289, 291-92, 25 Cal. Rptr. 441, 443-44.) We accordingly hold that the county is entitled to an accounting for profits earned by the bank on the void contracts of deposit.

The judgment of the appellate court is affirmed in part and reversed in part, and the cause is remanded to the circuit court of Lake County for further proceedings consistent with the views herein expressed.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.