No. 2--02--1063

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

______________________________________________________________________________

ADKINS ENERGY, LLC, ) Appeal from the Circuit Court

) of Stephenson County.

Plaintiff-Appellant, )

)

v. ) No. 01--MR--39

)

DELTA-T CORPORATION, ) Honorable

) Barry R. Anderson,

Defendant-Appellee. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Adkins Energy, LLC (Adkins), sought declaratory relief in response to alleged litigation threats by defendant, Delta-T Corporation (Delta-T), in connection with an ethanol plant that Adkins was building.  The trial court granted summary judgment for Delta-T on count I of Adkins's amended complaint.  It also granted Delta-T's motion to dismiss counts II and III, holding that the parties' rights were fixed and not subject to determination in a declaratory judgment action.  Adkins timely appeals.  We dismiss in part, reverse in part, and remand the cause.

BACKGROUND

Adkins owns a corn-to-ethanol processing plant, which, at all times pertinent to this cause, was being built in Lena, Illinois.  Delta-T is a provider of technology and engineering services.  Beginning in July 2001, a dispute arose between Adkins and Delta-T regarding whether a contractual or other relationship existed between them.  In November 2001 Adkins filed a four-count complaint for declaratory relief.  Delta-T moved to dismiss the complaint, and the trial court stayed discovery until it resolved the motion.  The trial court denied the motion to dismiss count I but granted the motion to dismiss counts II through IV.  The trial court permitted Adkins to replead and ordered Delta-T to respond to Adkins's discovery request.  Adkins submitted an amended complaint with three counts, seeking declarations that Delta-T was not and had no right to be a member of Adkins or an equity participant in Adkins in relation to the ethanol plant (count I); had no contractual rights against Adkins, including the right to be a subcontractor in the ethanol plant project (count II); and had no right to compensation from Adkins for expenses that Delta-T allegedly incurred in connection with the ethanol plant (count III).

Adkins attached to the complaint three letters it received from Delta-T.  In a July 6, 2001, letter, Delta-T stated that, if a satisfactory subcontract agreement could not be arranged with Lurgi PSI, one of the entities comprising Adkins, then "Adkins is bound to enter into a contract directly with Delta-T, or to pay Delta-T a fair amount to compensate for Delta-T's efforts."  Delta-T repeated this assertion in a letter dated July 12, 2001, stating, "[w]e firmly believe that Adkins, and one or more of its members, do have an obligation to Delta-T to include it in the project, or to compensate it for the services it has provided to Adkins and Adkins' predecessors since 1995."  Finally, Delta-T's owner wrote in an October 26, 2001, letter, "[m]y attorneys feel we have a strong legal case to prove that we were wronged and financially damaged."  He also stated that he had written the letter "to see if there was a way to work this situation out in a civilized manner" and hoped Adkins would "do the right thing" to avoid a "legal battle."

Delta-T's discovery response admitted the substance of count I.  Delta-T moved for summary judgment on that count, admitting that it was not entitled to be an equity participant in Adkins or the ethanol plant.  In its motion, Delta-T averred, "Count I involves no actual controversy for the Court to adjudicate and the Court should grant summary judgment in favor of Delta-T."  Adkins filed a cross-motion for summary judgment.  Delta-T also filed a motion to dismiss counts II and III pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2002)).  The trial court granted Delta-T 's motion for summary judgment on count I.  The trial court also granted Delta-T's motion to dismiss counts II and III, holding that Adkins was seeking a finding of nonliability for past conduct between the parties.  The court determined that the parties' rights were fixed and not subject to determination in a declaratory judgment action.

Adkins appeals, arguing that the trial court (1) erred when it granted summary judgment for Delta-T on count I; (2) erred when it dismissed counts II and III, which, Adkins claims, sought the resolution of an actual controversy and did not seek a declaration of nonliability for past conduct; and (3) abused its discretion when it stayed discovery until it determined whether Adkins's initial complaint stated a cause of action.

ANALYSIS

A declaratory judgment action requires (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests.  
Beahringer v. Page
, 204 Ill. 2d 363, 372 (2003); see 735 ILCS 5/2--701 (West 2002).  
For an actual controversy to exist, the case must present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.
  
Howlett v. Scott
, 69 Ill. 2d 135, 141-42 (1977), citing 
Underground Contractors Ass'n v. City of Chicago
, 66 Ill. 2d 371, 375 (1977).
  The declaratory judgment process exists so that the court may address a controversy after a dispute has arisen but before steps are taken that would give rise to a claim for damages or other relief.  
Beahringer
, 204 Ill. 2d at 372-73.
  In other words, a suit for declaratory judgment is premature if no actual controversy exists, but as long as the case is not one in which the controversy has progressed so far that there is nothing left for the parties to do except file suit for damages or other consequential relief, the controversy may still be resolved by declaratory judgment.

We first examine count I of the amended complaint, in which Adkins sought a declaration that Delta-T was not and had no right to be a member of Adkins or an equity participant in the ethanol plant.  Adkins argues that the trial court erred when it granted Delta-T summary judgment on count I.  Delta-T maintains that the issue is moot because Delta-T admitted the substance of count I.

Appellate jurisdiction is based upon the existence of a real controversy, and this court will dismiss an appeal involving only moot questions.  
La Salle National Bank, N.A.  v. City of Lake Forest
, 297 Ill. App. 3d 36, 42-43 (1998).  An issue is moot if the interests and rights of the parties are no longer in controversy and the resolution of the issue will have no practical effect.  
La Salle National Bank, N.A.
, 297 Ill. App. 3d at 43.  Even assuming, 
arguendo
, that the trial court erred in entering summary judgment for Delta-T on count I, the issue is moot.  The parties agree that Delta-T is not and has no right to be a member of Adkins or an equity participant in the ethanol plant.  Therefore, any resolution of the summary judgment issue would have no practical effect.  Adkins contends that the issue is not moot because Delta-T's admissions apply only to this case, and Delta-T could later plead that it has an equity interest in Adkins.  However, as both parties recognize, such a claim would be subject to the doctrine of judicial estoppel, which prohibits a party from taking  inconsistent positions in separate legal proceedings.  
McDonald's Corp. v. American Motorists Insurance Co.
, 321 Ill. App. 3d 972, 986 (2001).  Accordingly, we dismiss this portion of the appeal.

We next turn to counts II and III.  In count II, Adkins sought a declaration that Delta-T has no contractual or other rights against Adkins, including the right to be a subcontractor.  In count III, Adkins sought a declaration that Delta-T was not entitled to any compensation from Adkins for expenses that Delta-T allegedly incurred in connection with the ethanol plant.  A trial court's grant of a section 2--615 motion to dismiss a declaratory judgment action is subject to 
de novo
 review.  
Beahringer
, 204 Ill. 2d at 369.

Delta-T first maintains that Adkins's declaratory judgment action lacked an actual controversy because it was premature, citing 
Howlett
.  In 
Howlett
, the Secretary of State sought a declaratory judgment that his receipt of consulting fees was not a conflict of interest with his position on the Vehicle Recycling Board.  An investigation by the Attorney General's office had found that a conflict of interest existed, but the investigative report recommended delaying any action until the supreme court had reviewed two relevant appellate court decisions.  The 
Howlett
 court concluded that the Secretary's legal action was premature because the Attorney General did not indicate an intent to prosecute and the declarations sought depended on the future outcome of the two pending cases.  
Howlett
, 69 Ill. 2d at 142; see also 
Delano Law Offices, P.C. v. Choi
, 154 Ill. App. 3d 172, 174 (1987) (action seeking declaration that medical record charges were unreasonable was premature because defendant had not sought to enforce payment).

Adkins contends that 
Miller v. County of Lake
, 79 Ill. 2d 481 (1980), is more applicable to this situation.  There, the Lake County State's Attorney issued a formal opinion that Miller had violated corruption laws by serving as a county board member while owning stock in and serving as a director for a bank used as a depository for county money.  The State's Attorney also indicated that he intended to prosecute Miller for these violations.  Miller filed a complaint for declaratory relief.  The supreme court held that the indication of an intent to prosecute, along with the continuation of the relationship forming the basis of the suit, showed that an actual controversy existed.  
Miller
, 79 Ill. 2d at 488.

In the present case, Delta-T repeatedly asserted its belief that Adkins had to either include it in the ethanol project or compensate it for expenses.  Delta-T also indicated that, if an agreement was not reached with Adkins, Delta-T would file a lawsuit.  Unlike the circumstances in 
Howlett
, Adkins's rights were not dependent on future events.  Further, as in 
Miller
, Delta-T clearly threatened  litigation, thus creating an actual controversy.  See also 
Roland Machinery Co. v. Reed
, 339 Ill. App. 3d 1093, 1099 (2003) ("An expression of intent by one party to take legal action against another can be the basis of an actual controversy ripe for declaratory relief").

Delta-T also maintains that the trial court was correct in granting Delta-T's motion to dismiss because Adkins sought declarations of nonliability for past conduct, which are not obtainable under the declaratory judgment statute.  See 
Howlett
, 69 Ill. 2d at 143 (plaintiff, who had already terminated relationship at issue, not entitled to declaratory judgment because his rights were fixed).

Adkins argues that this doctrine is applicable only when the plaintiff's past conduct is at issue and that in this case Adkins did not allege any actions on its part giving rise to the question of liability.  Delta-T responds that the declarations Adkins sought would necessarily involve the past conduct of both parties.  Adkins further maintains that 
Howlett
 was limited by the supreme court in 
Miller
 to situations where the defendant never threatened litigation.  Both Adkins and Delta-T misconstrue the doctrine of nonliability for past conduct.  

The doctrine of nonliability for past conduct bars an action for declaratory judgment when the conduct that makes a party liable, that is, amenable to suit, has already occurred.  The fact that the amount allegedly owed under a contract is already fixed does not preclude a declaratory judgment action, because a party is not amenable to suit until a breach occurs.  Therefore, declaratory judgment could guide future conduct in such a situation because a court could determine whether or not a valid contract exists and, thereby, inform the party that potentially owes the money whether or not it would be in breach of contract should it refuse to pay.  In such a situation, only when a party refuses to pay does a declaratory judgment action become improper because, at that point, the refusal to pay either is or is not a breach of contract and there is no future action to guide.  A close examination of the case law in this area
 supports our interpretation.  

The court in 
Miller
 found that 
Howlett
 was distinguishable because, unlike in 
Howlett
, there was clear intent to prosecute and the relationship forming the basis of the suit was still ongoing.  
Miller
, 79 Ill. 2d at 488.  We believe that the fact that the relationship was still ongoing in 
Miller
 was relevant because that meant that the plaintiff could avoid future liability.  The purpose of a declaratory judgment action is to determine the rights of the parties so that the plaintiff can alter his future conduct to avoid liability.  
Beahringer
, 204 Ill. 2d at 373.  In 
Miller
, the plaintiff could be liable for future acts related to the bank involved in the controversy because he was still involved with the bank.  Conversely, in 
Howlett
, the plaintiff was no longer involved with the entity that was involved in the controversy and, hence, could be liable only for past acts related to that entity.  

In 
Eyman v. McDonough District Hospital
, 245 Ill. App. 3d 394, 396 (1993), the appellate court held that a declaratory judgment that the plaintiff properly terminated her employment agreement and could keep money advanced to her was not obtainable because the plaintiff was not seeking to learn consequences of future acts.  In
 Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.
, 99 Ill. App. 3d 433, 437 (1981), the appellate court reversed the declaratory relief awarded to the plaintiff by the trial court, because the plaintiff sought a declaration that its past conduct did not breach certain insurance policies rather than a declaration that it would not incur liability for a future course of conduct.  These cases turned on whether the act that could be considered the breach of contract had already occurred, not whether the acts that formed the contract had already occurred.  

The recent decision in 
Roland
, demonstrates that when the potentially breaching act has not yet occurred, a declaratory judgment action is proper.  In 
Roland
 the plaintiff had contracted to sell the defendant a bulldozer.  
Roland
, 339 Ill. App. 3d at  1095.
  The plaintiff delivered the bulldozer, which the defendant accepted.  
Roland
, 339 Ill. App. 3d at 1095.
  After complaining of various defects in the bulldozer, the defendant attempted to revoke his acceptance and obtain a refund of the purchase price.  
Roland
, 339 Ill. App. 3d at 1096.  Instead of denying the defendant's request, the plaintiff brought a declaratory judgment action seeking a declaration that it was not obligated to accept the return of the bulldozer and refund the purchase price.  
Roland
, 339 Ill. App. 3d at 1096.  The 
Roland
 court held that the doctrine of nonliability for past conduct was not applicable in that case because, 
inter
 
alia
, the plaintiff was seeking guidance on whether he would be obligated under the contract to accept the return and issue a refund.  
Roland
, 339 Ill. App. 3d at 1102-03.  

This case involves the determination of whether Adkins has any obligations to Delta-T.  Therefore, Adkins would be liable to Delta-T only if it breached any such obligations.  The instant situation is similar to that of an insurance company that seeks to determine whether it must pay an insured under an insurance contract.  Although there is scant Illinois case law on the application of the doctrine of nonliability for past conduct to insurance cases, we may look to foreign jurisdictions for guidance.  
Beahringer
, 204 Ill. 2d at 373 (holding that "[i]n interpreting the Illinois declaratory judgment statute, Illinois courts may look to the decisions of other states in interpreting the Uniform Declaratory Judgments Act (12 U.L.A. 309 (1996))").  In interpreting its declaratory judgment statute, which is based on the Uniform Declaratory Judgments Act (
Williams v. Kaylor
, 218 Ga. 576, 577, 129 S.E.2d 791, 792 (1963)), the Georgia Supreme Court held that it is proper for an insurance company to bring a declaratory judgment action to seek a determination that it need not pay the insured.  See 
Atlanta Casualty Co. v. Fountain
, 262 Ga. 16, 18, 413 S.E.2d 450, 452 (1992).  However, if the insurance company has already denied the claim, then declaratory judgment is improper because the insurance company would be seeking a determination that its denial of the claim, that is, past conduct, did not constitute a breach of contract.  See 
Atlanta Casualty
, 262 Ga. at 18, 413 S.E.2d at 452.  In this case, Delta-T essentially seeks to be made a subcontractor or, in lieu of such an appointment, be paid for its expenses incurred in connection with the Adkins plant.  Consequently, Adkins would not have breached any such agreement until it has not made Delta-T a subcontractor 
and
 has refused to pay Delta-T's expenses.  There is no indication that Adkins has already refused either of Delta-T's demands.  Analogous to an insurance company seeking a determination of its obligations under an insurance contract, Adkins is using declaratory judgment to determine whether it will be liable for breach of contract if it refuses to comply with Delta-T's assertions.  Therefore, we hold that the doctrine of nonliability for past conduct does not bar either count II or count III of Adkins's amended complaint.

Delta-T points out that a court must refuse to enter a declaratory judgment if it will not terminate the controversy or some part of the controversy.  See 735 ILCS 5/2--701(a) (West 2002).  Delta-T contends that this doctrine should bar count II because, if the trial court concludes that Delta-T is entitled to a subcontract, the controversy will continue.   However, Delta-T misapplies the rule.  If the trial court grants the relief sought in count II, a declaration that Delta-T does not have subcontractor rights, this portion of the controversy will be resolved.  

Accordingly, we reverse the trial court's dismissal of counts II and III and remand for further proceedings.

Lastly, Adkins asserts that the trial court erred when it stayed discovery until it ruled on Delta-T's first motion to dismiss.  Adkins contends that the case could have been resolved earlier or even settled if discovery had not been postponed.  A trial court has great latitude in ruling on discovery matters.   
Mutlu v. State Farm Fire & Casualty Co.
, 337 Ill. App. 3d 420, 434 (2003).  A trial court's rulings on such matters will not be disturbed absent a manifest abuse of discretion.  
Mutlu
, 337 Ill. App. 3d at 432.  Since we have already dismissed the portion of the appeal relating to count I, which was the same in the initial and amended complaints, we need not determine how the stay of discovery may have affected summary judgment on that count.

Counts II through IV of Adkins's original complaint were disposed on Delta-T's motion to dismiss.  A trial court may properly quash a discovery request when it has sufficient information upon which to decide a defendant's motion to dismiss.  
Mutlu
, 337 Ill. App. at 434.  However, it should not refuse a discovery request and grant a motion to dismiss when it reasonably appears that discovery may assist the nonmoving party.  
Mutlu
, 337 Ill. App. 3d at 434.  We cannot say it was a manifest abuse of discretion for the trial court to stay discovery until it ruled on the motion to dismiss, because if a cause of action had not been stated, discovery would have been unnecessary.  Adkins does not assert that discovery would have assisted it to successfully resist the motion to dismiss and, therefore, has not indicated that the stay harmed it in any manner.  Therefore, the trial court did not abuse its discretion in staying discovery until it resolved whether Adkins's initial complaint stated a cause of action.

CONCLUSION

Accordingly, we dismiss the portion of the appeal challenging the trial court's grant of summary judgment in favor of Delta-T on count I of Adkins's amended complaint.  With respect to counts II and III, we reverse and remand the cause for further proceedings consistent with this opinion.

Dismissed in part and reversed in part; cause remanded.

O'MALLEY, P.J., concurs.

JUSTICE HUTCHINSON, concurring in part and dissenting in part:

While I agree with the majority's resolution of counts I and II, I disagree that the trial court's decision dismissing count III of Adkins's complaint must be reversed.

In count III Adkins sought a declaration that Delta-T had no right to compensation from Adkins for expenses that Delta-T had incurred in connection with the ethanol plant.  The letters sent to Adkins by Delta-T reflect that Delta-T was requesting compensation in some manner for its "efforts."  As such, Delta-T sought to enter into a contractual agreement with Lurgi PSI, one of Adkins's entities, or in the alternative, to be compensated "for the services it has provided to Adkins and Adkins' predecessors since 1995."  Based on these representations, it appears that Delta-T was seeking compensation for services that it had provided in the past on behalf of Lurgi PSI, a related entity of Adkins.

 The purpose of a declaratory judgment is " 'to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right.' "  
Beahringer
, 204 Ill. 2d at 373, quoting 
First of America Bank, Rockford, N.A. v. Netsch
, 166 Ill. 2d 165, 174 (1995).  In this case, whatever compensation Delta-T may be entitled to for services and other expenses that it previously incurred is already fixed, and Adkins is not now attempting to avoid liability for a future course of conduct.  I believe that an action sounding in contract would be a more appropriate forum in which to litigate Delta-T's claim of compensation owing for past services.  I further believe that Delta-T, as the allegedly aggrieved party, should have the opportunity to seek relief at a time and in a forum of its choosing.  See 
Roland
, 339 Ill. App. 3d at 1102, citing  
Cunningham Brothers, Inc. v. Bail
, 407 F.2d 1165, 1168-69 (7th Cir. 1969).

Accordingly, I would have affirmed the trial court's dismissal of count III of Adkins's complaint.  I therefore respectfully concur in part and dissent in part.