ALTERNATE FUELS, INC., Plaintiff-Appellant and Cross-Appellee, v. THE DIRECTOR OF THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Defendants-Appellees and Cross-Appellants.

Fifth District   No. 5—01—0140

Opinion filed March 11, 2003.

Christine G. Zeman and David M. Walter, both of Hodge Dwyer Zeman, of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Alternate Fuels, Inc. (AFI), appeals from the trial court's denial of a summary judgment on count II of its complaint against the defendants, the Illinois Environmental Protection Agency and its director (collectively, the Agency). The trial court granted AFI's motion for a summary judgment on count I of the complaint, and it granted a "summary determination" on count II in favor of the Agency. AFI contends that the trial court's order denying a summary judgment on count II is inconsistent with its grant of a summary judgment on count I and that the summary determination on count II is in error as a matter of law. In its cross-appeal, the Agency argues just the opposite—that the trial court erred as a matter of law in granting a summary judgment in favor of AFI on count I. The substantive issue presented by both sides is whether the materials AFI receives, stores, and manufactures into an alternate fuel to be used by Illinois Power Company should be classified as waste, such that AFI would require a permit to continue its recycling business. AFI additionally argues that

the trial court erred in denying its request for the reasonable costs and expenses of litigation. The Agency contends that the trial court should have dismissed the complaint for a lack of jurisdiction because the case was not ripe.

## FACTS

AFI collects, separates, and processes plastic materials into alternate fuel at its plant in East St. Louis, Illinois. The plastic materials (polyethylene, polyolefin, and polyurethane, but not polyvinyl chloride (PVC)) come from approximately 12 suppliers. The plastic materials typically come from "triple rinsed" agricultural chemical containers from farm supply stores. AFI places the plastic containers into a granulating machine that shreds the plastic into small pieces.

AFI has a contract to supply up to 100,000 tons of alternate fuel to Illinois Power Company (now known as Dynegy, Inc., but referred to hereinafter as Illinois Power) for use at its Baldwin power plant, which produces electricity by means of coal-fired boilers. Both AFI and Illinois Power have plans to begin adding scrap wood from construction and demolition debris as an additional element of the alternate fuel.

AFI is required under its contract with Illinois Power to provide alternate fuel that meets certain specifications, the same specifications that Illinois Power is required to meet under the operating permits issued by the Agency for the Baldwin power plant. AFI in turn requires all of its suppliers of the components of the alternate fuel to sign a contract as evidence of their agreement to provide only materials free of nonconforming items, so that the wood delivered to AFI will contain only wood and the plastic will contain only plastic. Suppliers must certify that the materials delivered are not hazardous. Additionally, the suppliers must perform a fuel analysis on the materials to show that they meet the required specifications. These test results are reviewed by AFI before it accepts suppliers' bids. Before allowing materials into its facility, AFI also visually inspects the materials to check for compliance with the agreement.

The Illinois Pollution Control Board (the Board) reviewed the contract between AFI and Illinois Power in *Illinois Power Co. v. Illinois Environmental Protection Agency*, Ill. Pollution Control Bd. Op. 97-35, 97-36 (January 23, 1997). In that decision, the Board decided that the alternate fuel produced by AFI from the empty plastic containers was not waste within the meaning of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/1 *et seq.* (West 2000)). This decision was based upon the Agency's denial of Illinois Power's request to revise its air permits to allow for the combustion of AFI's

alternate fuel at the Baldwin power plant. The Agency had denied Illinois Power's request. The Agency had claimed that AFI's alternate fuel constituted waste and that Illinois Power was required to obtain local siting approval pursuant to section 39.2 of the Act (415 ILCS 5/39.2 (West 2000)).

The Board rejected the Agency's claim and held that AFI's alternate fuel was not waste within the meaning of the Act. The Board ruled that Illinois Power did not require local siting approval, and the Board ordered the Agency to issue Illinois Power an operating permit to allow for the combustion of the alternate fuel.

Despite the Board's decision, the Agency continued to interpret the Act as requiring the facilities manufacturing the alternate fuel to comply with solid-waste-permitting and local-siting-approval procedures. Essentially, the Agency took the position that although the alternate fuel used by Illinois Power does not constitute waste, the materials used to make that alternate fuel are waste subject to permitting rules. On July 8, 1998, the Agency issued a violation notice to AFI pursuant to section 31(a)(1) of the Act (415 ILCS 5/31(a)(1) (West 2000)). The notice alleged that AFI had violated sections 21(d)(1) and 21(e) of the Act (415 ILCS 5/21(d)(1), (e) (West 2000)) because AFI was storing and treating waste at its facility without a permit from the Agency. The notice indicated that AFI might be prosecuted for the violation and that if AFI failed to respond to the notice, it would waive its opportunity to meet with the Agency prior to any prosecution.

The violation notice required AFI to submit a permit application for a waste-storage and waste-treatment operation. The permit-application procedure additionally requires proof of local siting approval under section 39.2 of the Act (415 ILCS 5/39.2 (West 2000)).

The Agency contends in its brief to this court that the "record contains no indication that AFI responded to the Violation Notice" and that instead of responding or preparing to defend against potential prosecution, AFI filed its complaint for a declaratory judgment. The Agency is correct that on November 2, 1998, AFI filed a complaint for a declaratory judgment, but it is incorrect in its assertion that AFI did not respond to the violation notice. The record is clear that AFI responded to and met with Agency officials, and the Agency admitted that in its answer to AFI's complaint for a declaratory judgment.

On September 15, 1998, Agency representatives met with David Wieties, AFI's president, to discuss the allegations of the violation notice. The Agency advised Wieties that it interprets the statutory term "discarded material" as the phrase is used in the definition of waste (415 ILCS 5/3.53 (West 2000)). In that definition, discarded material refers to any material that is not being used for its original

purpose. According to the Agency, since the component materials used to manufacture the alternate fuel are not being used for their original purpose, they are discarded, and the process by which AFI recycles the materials into alternate fuel is a waste-treatment process requiring permits and local siting approval.

After its receipt of the violation notice, AFI halted production of alternate fuel for Illinois Power. AFI has lost financing from primary investors and has not been able to secure new investors or suppliers due to its receipt of the violation notice.

■ On November 2, 1998, AFI filed its two-count complaint against the Agency. AFI sought a declaration that neither the material used to make the alternate fuel nor the fuel itself is waste within the meaning of the Act, based upon the argument that the Board's decision in *Illinois Power Co.* set forth the appropriate test for determining whether nonhazardous, fuel-grade material is properly classified as waste. AFI also asked the court to award it all the reasonable costs it had incurred in bringing the action, including attorney fees. AFI argued that the Agency's interpretation of discarded material amounts to an administrative rule not authorized by the Act and contrary to the Board's holding in *Illinois Power Co.* The request for costs and attorney fees was made pursuant to section 10—55 of the Illinois Administrative Procedure Act (5 ILCS 100/10—55 (West 2000)). Section 10—55 provides in pertinent part as follows:

> "(c) In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." 5 ILCS 100/10—55(c) (West 2000).

Agency employees admitted that the AFI facility was clean and orderly and posed no threat to the environment. The Agency took the position, however, that other plants besides AFI might choose to enter the alternate-fuel-production business and that they might not conduct their business in an environmentally safe manner. Hence, the Agency asserted that the violation notice it issued to AFI would serve as guidance to others in the regulated community that the materials used in the production of alternate fuel constitute waste subject to permitting procedures and that requiring such plants to submit to the permit procedure was necessary for the protection of the environment.

On July 12, 1999, AFI filed a motion for a summary judgment on count I. AFI asked the trial court to rule that the materials used for alternate-fuel production do not constitute waste. On September 1,

1999, the trial court ruled as a matter of law that no genuine issue of material fact existed regarding count I. Specifically, the trial court stated, "[A]ny determination or interpretation by the [Agency] that the raw materials when provided to [the] AFI facility are waste is simply beyond reason and common sense[,] and specifically[,] those materials, once they are there, are not discarded; they are not intended to be discarded and consequently are not waste."

On February 11, 2000, AFI filed a motion for a summary judgment on count II. AFI sought a declaration that the Agency's policy of regulating materials not being used for their original purposes as waste under the Act amounts to unauthorized rule-making and that, as a result, AFI was entitled to an award of all its reasonable costs and attorney fees for having to file a declaratory judgment action against the Agency. On April 11, 2000, the Agency filed a motion for a summary determination, and AFI filed a response thereto on April 24, 2000.

Also on April 24, 2000, the trial court denied AFI's motion for a summary judgment on count II. The court's order did not include any explanation for the ruling. This order was mailed to the parties at incorrect addresses, causing a delay in the proceedings until November 1, 2000, when AFI finally learned of the court's ruling and filed a motion for leave to file an interlocutory appeal or for a clarification of the ruling. On December 14, 2000, the court conducted a hearing on all pending motions.

On January 31, 2001, the court entered an order denying AFI's motion for a summary judgment on count II for the following reason:

"A genuine issue of material fact exists as to whether the material in question, 'feedstock,' or material from which the alternate fuel is derived, is 'waste' within the meaning of the statute. (See sworn deposition testimony of Bakowski and Mensing of record.)"

In the same order, the court granted the Agency's motion for a summary determination, ruling (1) that the issuance of the violation notice was not an administrative rule under the Illinois Administrative Procedure Act, (2) that the issuance of the violation notice was explicitly authorized under section 31 of the Act (415 ILCS 5/31 (West 2000)), and (3) that the Agency's interpretation of the phrase "discarded material" as referencing any material not being used for its original purpose could not be considered an administrative rule under the Illinois Administrative Procedure Act. Accordingly, the court denied AFI's request for attorney fees and costs. This appeal followed.

## ANALYSIS

### 1. Standard of Review

■ A trial court's grant or denial of a summary judgment presents a question of law and is subject to *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992). The review of a trial court's denial of fees under section 10—55 of the Illinois Administrative Procedure Act presents the question of whether the court abused its discretion. *Carson Pirie Scott & Co. v. Illinois Department of Employment Security*, 131 Ill. 2d 23, 48-49 (1989).

### 2. Agency's Claim That Trial Court Lacked Jurisdiction

The Agency contends that AFI's complaint for a declaratory judgment was premature, initiated at a time when it was unclear whether the Agency would ever act upon the violation notice. According to the Agency, the mere notice of the potential for action against AFI did not create a justiciable claim capable of resolution by the trial court. AFI counters that Illinois case law does not require an actual injury before an actual controversy is ripe for consideration.

■ Under the Illinois Constitution, the circuit courts have jurisdiction only over "justiciable matters." Ill. Const. 1970, art. VI, § 9. The doctrine of ripeness prohibits the courts from adjudicating disputes over administrative matters until the administrative decision has been formalized and is effective on the parties. *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 546 (1977). However, it is not only a finalized order that constitutes a justiciable controversy, but the agency's threat of action that could prove detrimental to the party may also warrant judicial consideration. *Bio-Medical Laboratories, Inc.*, 68 Ill. 2d at 546.

■ In the case at bar, the Agency threatened to act in a manner detrimental to AFI's interests by issuing the violation notice and threatening prosecution if AFI did not comply with the permitting procedures. This action by the Agency provided a sufficiently ripe controversy to warrant judicial consideration of AFI's complaint for a declaratory judgment. See *Sanitary District of Decatur v. Pollution Control Board*, 66 Ill. App. 3d 251, 254-55 (1978).

### 3. Whether Alternate Fuel Should Be Defined as Waste

■ Section 3.30 of the Act provides as follows:

" 'Recycling, reclamation[,] or reuse' means a method, technique, or process designed to remove any contaminant from waste so as to render such waste reusable[ ] or any process by which materials that would otherwise be disposed of or discarded are collected, separated[,] or processed and returned to the economic mainstream

in the form of raw materials or products." 415 ILCS 5/3.30 (West 2000).

AFI argues that the above-quoted statute shows the legislative intent to distinguish between waste that is discarded and materials that might otherwise be discarded but are instead "returned to the economic mainstream" by way of the process of recycling, reclamation, or reuse. We agree.

■ Section 3.53 of the Act defines waste as follows:

" 'Waste' means any garbage, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility[,] *or other discarded material*, including solid, liquid, semi[ ]solid, or contained gaseous material resulting from industrial, commercial, mining[,] and agricultural operations ***." (Emphasis added.) 415 ILCS 5/3.53 (West 2000).

The Agency argues that the plastic material delivered to the AFI facility by its suppliers constitutes "other discarded material" that is waste under section 3.53. AFI argues that these materials are not otherwise discarded because they are materials that would otherwise be disposed of but are instead returned to the economic mainstream through AFI's recycling process. AFI maintains that the plastic products brought to its facility could pose problems if they were discarded in landfills and that, because of those potential problems, AFI and Illinois Power have found a use for them, rather than allow them to be discarded.

■ The issue arises in this case because the phrase "discarded material" is used in several places in the Act, but it is never defined. Where the meaning of a statute is not clear from the statutory language itself, the court properly considers the purpose behind the statute and the evils it is designed to remedy. *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484 (1992). The most basic purpose of the Act is to protect the environment of our state. 415 ILCS 5/2 (West 2000). To ascertain the more specific intent of the statute in question, it is necessary to look first to the language of the statute as a whole, giving consideration to every section as it relates to every other section. *Antunes*, 146 Ill. 2d at 484.

AFI contends that a comprehensive review of the Act as a whole, logic, common sense, and the definitions of recycling, reclamation, and reuse dictate that the materials delivered to its plant for the manufacture of alternate fuel are not discarded but are a part of the process that keeps them from being discarded in the first place. According to AFI, the public policy and rationale behind the General Assembly's distinction between the materials that are discarded and thus require a waste permit and local siting and those that are not

discarded because they are part of a recycling process is clear from the Act.

█ The Board's decision in *Illinois Power Co.* is evidence that the Board shares AFI's interpretation of the Act. The Board stated in that decision that it was persuaded by Illinois Power's argument that the alternate fuel provided by AFI was a valuable energy product that exhibited "no characteristics of being discarded when utilized under the conditions of Illinois Power's proposal." *Illinois Power Co.*, op. at 14. The Board further stated, "As stipulated by the parties, the alternative fuel is to be produced through a coordinated effort between Illinois Power and REI [(the former name of AFI)]." *Illinois Power Co.*, op. at 14. We see no real distinction between the product at the time it enters AFI's facility and the product after it leaves, because the material is at all times destined to become alternative fuel that is not discarded. Regulating the process at the outset makes no more sense than regulating it at the end.

An interpretation of the Act in this manner best supports the Act's most basic purpose, protecting the environment of our state. The legislature has seen fit to allow recycling centers such as AFI to operate outside of the permitting and local siting process reserved for waste-treatment and pollution-control facilities. Avoiding this additional step in the regulatory process provides an incentive to open these facilities and an incentive for the suppliers to recycle their materials rather than to discard them in costly and unproductive landfills.

Therefore, we agree with AFI and the circuit court that the materials delivered to AFI for recycling into alternate fuel are not discarded, are not waste, and are not subject to the permit and local siting procedures applicable to waste. Accordingly, we affirm the trial court's grant of a summary judgment to AFI on count I of its complaint for a declaratory judgment.

### 4. Denial of Costs and Attorney Fees

AFI argues that it is clear from the depositions, affidavits, and pleadings filed in this case that the Agency intended its interpretation of discarded material to be applied to every alternate-fuel manufacturing facility in the state and that this intention makes the issuance of the violation notice to AFI an unauthorized rule of general applicability. The Agency counters that its intention regarding the broader application of the violation notice issued to AFI does not meet the statutory definition of a rule.

█ Under the Illinois Administrative Procedure Act, a rule is defined as follows:

" 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy[ ] but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (ii) informal advisory rulings issued under Section 5—150, (iii) intra-agency memoranda, (iv) the prescription of standardized forms, or (v) documents prepared or filed or actions taken by the Legislative Reference Bureau under Section 5.04 of the Legislative Reference Bureau Act." 5 ILCS 100/1—70 (West 2000).

■ There is no basis upon which to find that the violation notice issued to AFI is a rule of general applicability under the above-quoted statutory provision. The violation notice did not apply to any party besides AFI, and the trial court correctly ruled that this specific notice of violation was not an administrative rule. The Agency's intention to apply the same policy to other businesses if they should choose to offer recycling services similar to AFI's does not change the specifically targeted violation notice into a rule of general applicability. Therefore, the trial court did not abuse its discretion in denying AFI's motion for costs and attorney fees.

Another basis of the trial court's ruling was that the issuance of the violation notice was authorized under section 31 of the Act. Section 31 provides the time frame and procedures for issuing notices of alleged violations of the Act or of any rule adopted under the Act. 415 ILCS 5/31 (West 2000). Although neither the trial court nor this court agrees with the Agency's interpretation of the Act as requiring permits and local siting for recycling centers such as AFI's, the Agency was entitled to take that position until the court ruled to the contrary. Therefore, the Agency's action in issuing the violation notice was not unauthorized under the Act, only unsuccessful. Since the Agency's issuance of the violation notice was authorized, AFI has no basis for collecting costs and attorney fees, and the trial court did not abuse its discretion.

AFI argues that the trial court's order denying costs and attorney fees to AFI is inconsistent with its earlier grant of a summary judgment in favor of AFI. The trial court stated in the denial order that a genuine issue of material fact existed about whether the materials used to make the alternate fuel are waste within the meaning of the statute. We find that statement in the trial court's order to be mere surplusage without any real effect, no more than an unfortunate choice of words. The only effect of the order entered on January 31, 2001, was to deny AFI's request for costs and attorney fees. The order did not overturn the court's earlier grant of a summary judgment to AFI

on count I. Therefore, we affirm the trial court's denial of AFI's motion for a summary judgment on count II.

## CONCLUSION

For all the reasons stated, we affirm the trial court's entry of a summary judgment on count I of AFI's complaint, and we affirm the court's denial of AFI's motion for a summary judgment on count II.

Affirmed.

WELCH and MAAG, JJ., concur.